# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## BANKRUPTCY DIVISION
## DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| In re: | : | Chapter 7 |
|  | : |  |
| JEFFREY J. PROSSER, | : | Case No. 06-30009 |
|  | : |  |
| Debtor. | : |  |
|  | : |  |
| OAKLAND BENTA, JEFFREY J. PROSSER, AND DAWN E. PROSSER, | : | Adv. Pro. 3:21-ap-03001 (MFW) |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| CHRISTIE'S INC., CHARLES ANTIN, FOX ROTHSCHILD LLP, YANN GERON, WILLIAM H. STASSEN, DAVID M. NISSMAN, JAMES P. CARROLL, | : | |
|  | : |  |
| Defendants. | : |  |

## OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. BANKR. P. 7012

**FOX ROTHSCHILD LLP**
Elizabeth C. Viele (admitted *pro hac vice*)
101 Park Avenue, Suite 1700
New York, NY 10178
*Attorneys for Fox Rothschild LLP, Yann Geron, William H. Stassen, and James P. Carroll*

**HUNTON ANDREWS KURTH LLP**
Rachel E. Hudgins (Bar No. R2075)
Joseph Patella
200 Park Avenue, 52nd Floor
New York, NY 10166
*Attorneys for Christie's, Inc., Charles Antin and David M. Nissman*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND........................................................................................ 1

    A.    Multiple Courts Have Already Rejected Plaintiffs' Racketeering
    Allegations. ........................................................................................ 1

    B.    This Court Has Already Made Findings Relating to the Allegations of the
    Complaint........................................................................................... 3

        1.    Plaintiffs' "Shoys Wine Fraud" Allegations................................. 3

        2.    Plaintiffs' "Rogue VIPD Investigation Theory Implementation"
        Allegations .................................................................................. 4

    C.    The District Court Has Previously Dismissed the Plaintiffs' Claims Against
    Defendants With Prejudice. ................................................................. 7

    D.    Plaintiffs' Allegations Concerning Defendants' Alleged Racketeering Acts
    and the Findings Of This Court. .......................................................... 9

LEGAL ARGUMENT................................................................................................ 12

    I.    PLAINTIFFS' ACTION SHOULD BE DISMISSED AS TO THE
    TRUSTEE AND HIS AGENTS ON THE GROUNDS OF JUDICIAL
    IMMUNITY....................................................................................... 12

    II.    PLAINTIFFS' ACTION IS BARRED BY THE APPLICABLE
    STATUTES OF LIMITATION ........................................................... 15

        A.    Plaintiffs' First and Second Causes of Action Are Barred By The
        Applicable Statutes of Limitation .............................................. 16

        B.    Plaintiffs' Third and Fourth Causes of Action Are Barred By The
        Applicable Statutes of Limitation .............................................. 17

        C.    Plaintiffs' Fifth and Sixth Causes of Action Are Barred By The
        Applicable Statutes of Limitation .............................................. 17

        D.    Equitable Tolling Does Not Apply ............................................. 19

        E.    The Relation Back Doctrine Does Not Apply ............................ 20

    III.    PLAINTIFFS' ACTION IS BARRED BY COLLATERAL ESTOPPEL ........... 21

    IV.    PLAINTIFFS FAIL TO ADEQUATELY PLEAD RICO CLAIMS ................... 24

A.  Plaintiffs' RICO Claims Fail for Lack of Statutory Standing.................. 25

    i.  Plaintiffs Have Not Alleged a Cognizable Injury to Their Business or Property ..................................................... 25

    ii.  Plaintiffs Have Not Plausibly Alleged Causation......................... 27

B.  Plaintiffs Have Not Plausibly Alleged that Defendants Participated in Conducting the Affairs of the Alleged Enterprise ................................ 28

C.  Plaintiffs Have Not Plausibly Alleged a Pattern of Racketeering Activity ................................................................................. 30

    i.  Plaintiffs Have Failed to Plausibly Allege Relatedness................ 30

    ii.  Plaintiffs Have Failed to Adequately Allege Continuity .............. 33

D.  Plaintiffs Have Not Plausibly Alleged a RICO Conspiracy .................... 35

V.  PLAINTIFFS FAIL TO ADEQUATELY PLEAD CICO CLAIMS .................. 37

A.  Plaintiff's Substantive CICO Claims Fail for Lack of Statutory Standing ................................................................................ 38

B.  Plaintiffs Have Not Plausibly Alleged that Defendants Participated in Conducting the Affairs of the Alleged CICO Enterprise...................... 38

C.  Plaintiffs Have Not Plausibly Alleged a CICO Conspiracy .................... 39

VI.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1985 .............. 39

A.  Plaintiffs' Claims Under Section 1985(1) Fail Because Benta Was Not A United States Officer.................................................... 40

B.  Plaintiffs' Claims Under 42 U.S.C. 1985(2) Fail As Asserted Against The Attorney Defendants ............................................. 41

C.  Plaintiffs' Claims Under Sections 1985(1) And (2) Fail To State A Claim Against All Parties ................................................... 43

VII.  PLAINTIFFS FAILS TO STATE A CLAIM FOR DEFAMATION .................. 45

VIII.  PLAINTIFFS FAIL TO STATE A FIRST AMENDMENT CLAIM.................. 48

IX.  CONCLUSION.................................................................................. 49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987)..................................................................................................16

*Ambrosia Coal & Constr. Co. v. Page Morales*,
   482 F.3d 1309 (11th Cir. 2007) ..............................................................................24

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)..............................................................................................27, 28

*Argueta v. U.S. Immigr. & Customs Enf't*,
   643 F.3d 60 (3d Cir. 2011)....................................................................................26, 30

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................24

*In re Atomica Design Grp., Inc.*,
   556 B.R. 125 (Bankr. E.D. Pa. 2016) ......................................................................30

*Bailey v. Bd. of Cnty. Comm'rs*,
   956 F.2d 1112 (11th Cir. 1992) ...............................................................................44

*Balthazar v. Atlantic City Med. Ctr.*,
   279 F.Supp.2d 574 (D.N.J. 2003) ............................................................................24

*Barren by Barren v. United States*,
   839 F.2d 987 (3d Cir. 1988).....................................................................................19

*Barticheck v. Fid. Union Bank/First Nat'l State*,
   832 F.2d 36 (3d Cir. 1987).......................................................................................33

*Barton v. Barbour*,
   104 U.S. 126 (1881)....................................................................................................8

*Beckerman v. Weber*,
   317 F. App'x. 125 (3d Cir. 2008) ............................................................................48

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................43

*Carroll v. Prosser*,
   Civil No. 08-147 (DE 80) (*aff'd, In re Jeffrey J. Prosser*, Appeal No. 12-2864
   (3d Cir. August 1, 2013))............................................................................................7

*Charleswell v. Chase Manhattan Bank, N.A.*,
   2009 WL 1850650 (D.V.I. June 24, 2009) ...........................................................................17

*Christopher v. Harbury*,
   536 U.S. 403 (2002)........................................................................................................48

*D&d Assocs., Inc. v. Bd. of Educ. of N. Plainfield*,
   2015 WL 8582984 (D.N.J. Dec. 10, 2015) ....................................................................41

*Davis v. Twp. of Hillside*,
   190 F.3d 167 (3d Cir. 1999)...........................................................................................45

*Doherty v. American Motors Corp.*,
   728 F.2d 334 (6th Cir. 1984) .........................................................................................41

*Dorval v. Sapphire Vill. Condo. Owners Ass'n*,
   838 F. App'x 8 (3d Cir. 2020) .......................................................................................46

*Dunning v. Varnau*,
   No. 1:14CV932, 2015 WL 5729332 (S.D. Ohio Sept. 30, 2015)...........................................40

*Efron v. Embassy Suites (P.R.), Inc.*,
   223 F.3d 12 (1st Cir. 2000), *cert. denied*, 532 U.S. 905 (2001) .............................................32

*In re Equivest St. Thomas, Inc*,
   53 Bankr. Ct. Dec. 260, 2010 WL 4343616 (Bankr. D.V.I. Nov. 1, 2010)............................17

*Espinosa v. Redfield*,
   69 V.I. 349 (V.I. Super. Ct. 2018) ................................................................................48

*Farese v. Scherer*,
   342 F.3d 1223 (11th Cir. 2003) ....................................................................................41

*Figueroa Ruiz v. Alegria*,
   896 F.2d 645 (1st Cir. 1990).........................................................................................24

*FL Receivables Trust v. Bagga*,
   Civ. A. No. 03-5108, 2005 WL 563535 (E.D. Pa. Mar. 8, 2005)...........................................25

*Gardiner v. St. Croix Dist. Governing Bd. of Dires.*,
   2019 WL 3814427 (V.I. Super. July 30, 2019) ....................................................................38

*Gibson v. Mut. Life Ins. Co. of N.Y.*,
   465 S.E.2d 56 (N.C. Ct. App. 1996)..............................................................................47

*Gonzalez v. Portfolio Recovery Assocs., LLC*,
   2013 WL 5334075 (D.N.J. Sept. 20, 2013) ...................................................................21

*Govt. of U.S. Virgin Islands v. Takata Corp.,*
67 V.I. 316, 2017 WL 3390594 (V.I. Super. June 19, 2017)....................................37

*H.J. Inc. v. Nw. Bell Tel. Co.,*
492 U.S. 229 (1989)..........................................................................................30, 33

*In re Harris,*
590 F.3d 730 (9th Cir. 2009) .....................................................................................13

*Ins. Brokerage Antitrust Litig.,*
618 F.3d 300, 370 (3d Cir. 2010) ..............................................................................28

*Hedges v. United States,*
404 F.3d 744 (3d Cir. 2005)........................................................................................20

*Heffernan v. Hunter,*
189 F.3d 405 (3d Cir. 1999).......................................................................................41

*Hemi Grp. LLC v. City of N.Y.,*
559 U.S. 1 (2010)...............................................................................................25, 27

*Holmes v. Sec. Inv. Prot. Corp.,*
503 U.S. 258 (1992).........................................................................................25, 27

*Howard v. Leoanard,*
101 B.R. 421 (D.N.J. 1989) .......................................................................................13

*Hughes v. Consol-Pa., Coal Co.,*
945 F.2d 594 (3d Cir. 1991)........................................................................................33

*In re Ins. Brokerage Antitrust Litig.,*
579 F.3d 241 (3d Cir. 2009)........................................................................................28

*Irwin v. Dep't of Veterans Affairs,*
498 U.S. 89 (1990)......................................................................................................19

*In re J & S Props., LLC*
545 B.R. 91 (Bankr. W.D. Pa. 2015) ...................................................................13, 15

*Jarbo v. U.S. Suburban Bldg. Servs., Inc.,*
No. CV 15-14458, 2017 WL 3262420 (E.D. Mich. July 5, 2017) .........................21

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,*
458 F.3d 244 (3d Cir. 2006)........................................................................................22

*Jeffrey J. Prosser v. Federal Agricultural Mortgage Corporation et al.,*
Civil Case No. 08-cv-687 (D.D.C.) ............................................................................3

v

*Jones v. Bull Moose Tube Co.*,
  2010 WL 1781710 (N.D. Ill. Apr. 26, 2010) ........................................................21

*Kadonsky v. New Jersey*,
  188 F. App'x 81 (3d Cir. 2006) ...........................................................................16

*Kendall v. Daily News Pub. Co.*,
  716 F.3d 82 (3d Cir. 2013)...................................................................................45

*Ketner v. Widell*,
  No. 5:20-cv-6360, 2021 WL 2808829 (E.D. Pa. July 6, 2021) ...........................26

*Knit With v. Knitting Fever, Inc.*,
  CIV.A. 08-4221, 2012 WL 2938992 (E.D. Pa. July 19, 2012)......................26, 37

*Kolar v. Preferred Real Est. Invs.*,
  361 Fed. App'x 354 (3d Cir. Jan. 12, 2010) ...................................................32, 35

*LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*,
  196 F.3d 1 (1st Cir. 1999).....................................................................................14

*Leonard v. Shearson Lehman/Amer. Express, Inc.*,
  687 F. Supp. 177 (E.D. Pa. 1988) .........................................................................35

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993)....................................................................................35

*Lockhart v. Gov't of Virgin Islands*,
  2009 WL 812266 (D.V.I. Mar. 26, 2009) .............................................................18

*Maio v. Aetna, Inc.*,
  221 F.3d 472 (3d Cir. 2000)..................................................................................25

*Manns v. Leather Shop Inc.*,
  960 F.Supp. 925 (D.V.I. 1997) .............................................................................45

*McNeil v. United States*,
  508 U.S. 106 (1993)...............................................................................................20

*McTernan v. City of York*,
  577 F.3d 521 (3d Cir. 2009)..................................................................................26

*Mierzwa v. Safe & Secure Self Storage, LLC*,
  493 F. App'x 273 (3d Cir. 2012) ...........................................................................41

*Muhammad v. Cappellini*,
  477 Fed.Appx. 935 (3d Cir. 2012) ........................................................................43

vi

*In re National Rural Utilities Cooperatibe Finance Corp.,*
  Adv. 09-52854, DE 180 (Bankr, DE. December 2015) ........................................................3

*In re National Rural Utilities Cooperative Finance Corp.,*
  Civ. Action No. 12-155 (D. DE, March 20, 2013) ................................................................3

*Ormsby v. Luzerne Cty. Dep't of Pub. Welfare Off. of Hum. Servs.,*
  149 F. App'x 60 (3d Cir. 2005)........................................................................................18

*Parrott v. Abramsen,*
  200 F. App'x 163 (3d Cir. 2006) ......................................................................................43

*Pemberton Sales & Servs., Inc. v. Banco Popular de P.R.,*
  877 F. Supp. 961 (D.V.I. 1994) ........................................................................................3

*People v. McKenzie,*
  66 V.I. 3 (V.I. Super. Jan. 30, 2017)................................................................................37

*Poleon v. Gov't of Virgin Islands,*
  2018 WL 3764086 (Bankr. D.V.I. Aug. 8, 2018)................................................................45

*In re Prosser,*
  2016 WL 4821261 (D.V.I. Sept. 8, 2016) .........................................................................15

*Prudential Ins. Co. of Am. v. U.S. Gypsum Co.,*
  359 F.3d 226 (3d Cir. 2004)............................................................................................16

*Ramos v. Main,*
  2021 WL 4311427 (D.N.J. Sept. 22, 2021) ......................................................................40

*Reves v. Ernst & Young,*
  507 U.S. 170 (1993) ...............................................................................................28, 29

*Robinson v. Dalton,*
  107 F.3d 1018 (3d Cir. 1997)..........................................................................................19

*Rossy v. Puerto Rico Police Dep't*
  2009 WL 1140174 (D.P.R. Apr. 24, 2009)........................................................................40

*Rotella v. Wood,*
  528 U.S. 549 (2000)......................................................................................................16

*Rothberg v. Marger,*
  CIV. 11-5497, 2013 WL 1314699 (D.N.J. Mar. 28, 2013) ..................................................24

*Sarpolis v. Tereshko,*
  26 F. Supp. 3d 407 (E.D. Pa. 2014) .....................................................................25, 28, 33

127609083.2

*Sedima, S.P.R.L. v. Imrex Co.,*
  473 U.S. 479 (1985)................................................................................28

*Seitzinger v. Reading Hosp. & Med. Ctr.,*
  165 F.3d 236 (3d Cir. 1999)....................................................................19

*Shulman v. Zsak,*
  485 F. App'x 528 (3d Cir. 2012) ............................................................43

*Sprauve v. CBI Acquisitions, LLC,*
  2010 WL 3463308 (D.V.I. Sept. 2, 2010) ..............................................47

*St. Luke's Health Network, Inc. v. Lancaseter Gen. Hosp.,*
  967 F.3d 295 (3d Cir. 2020) .......................................................26, 27, 28

*In re Summit Metals, Inc.,*
  477 B.R. 484 (Bankr. D. Del. 2012) .......................................................13

*Tabas v. Tabas,*
  47 F.3d 1280 (3d Cir. 1995)....................................................................33

*Taha v. I.N.S.,*
  828 F. Supp. 362 (E.D. Pa. 1993) ..........................................................14

*United States v. Bergrin,*
  650 F.3d 257 (3d Cir. 2011)...............................................................30, 33

*Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.,*
  996 F.2d 1534 (3d Cir. 1993)...............................................................28, 29

*Virgin Islands v. Adams,*
  2010 WL 7371482 (V.I. Super. Nov. 12, 2010) .....................................38

*In re VistaCare Group, LLC,*
  678 F.3d 218 (3d Cir. 2012).....................................................................8

*Voth v. Hoffman,*
  2016 WL 7535374 (D.N.J. Apr. 28, 2016) .............................................44

*Walter v. Drayson,*
  538 F.3d 1244 (9th Cir. 2008) ................................................................29

*Weeks v. Leeward Islands Apothecaries,*
  2011 WL 612734 (D.V.I. Feb. 11, 2011)................................................46

**Statutes**

18 U.S.C. § 153.............................................................................................9, 10

viii

18 U.S.C. § 1961(5) ................................................................................................37

18 U.S.C. § 1962(d) ...............................................................................................35

18 U.S.C. § 1964(c) ................................................................................................24

42 U.S.C. §§ 1985 (1) and (2) ........................................................................ *passim*

RICO §§ 1962(c) and (d) ........................................................................................15

V.I. Code ......................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................................................24, 44

Fed. R. Civ. P. 9(b) .................................................................................................24

Fed. R. Civ. P. 12 ...................................................................................................24

Fed. R. Civ. P. 12(b)(6) .....................................................................................14, 30

127609083.2

## PRELIMINARY STATEMENT

The instant Complaint was filed by Jeffrey Prosser ("**Prosser**" or the "**Debtor**"), the debtor in this Chapter 7 bankruptcy case, his wife, Dawn Prosser ("**Dawn Prosser**"), and Oakland Benta ("**Benta**"), the former head of security for the Prosser family and Jeffrey Prosser's companies, who has acted as the Prossers' agent during the Debtor's bankruptcy case ("Prosser", "Dawn Prosser" and "Benta" are collectively referred to herein as "**Plaintiffs**").

The Complaint is the third attempt by Plaintiffs to assert claims against Defendants (although Defendant Trustee James Carroll (the "**Trustee**" or "**Trustee Carroll**" and Defendant Fox Rothschild LLP ("**Fox**") were not named as defendants in the first complaint filed in the United States District Court of the Virgin Islands (the "**District Court**"), discussed herein).  The Complaint is also Prosser's latest attempt to claim that his bankruptcy case is the result of a retaliatory conspiracy.  All of his previous complaints have been dismissed.  The same result is justified here, as the Complaint is nothing more than a collateral attack on prior rulings by this Court, entered after an evidentiary hearing, which eviscerate the factual and legal foundation of the claims asserted.  As explained herein, each of Plaintiffs' claims fail on multiple independent grounds and are subject to dismissal as a straightforward matter of law.[1]

## FACTUAL BACKGROUND

### A.    Multiple Courts Have Already Rejected Plaintiffs' Racketeering Allegations.

This Court should note that large portions of the Complaint are devoted to factual allegations that do not reference any of the seven Defendants.  Specifically, the Complaint sets forth Plaintiffs' "Overview of the Myriad Racketeering Enterprises," which they allege caused the involuntary Chapter 11 Bankruptcies of Prosser's companies.  Complaint at pgs. 3-7.  The

---

[1] Defendants reserve the right to seek sanctions against Plaintiffs for the filing of the Complaint.

Complaint is the latest in a long line of complaints filed by the Debtor against multiple parties in multiple jurisdictions asserting, as he does here, conspiracy claims that allegedly led to corrupt bankruptcy proceedings.  This Court may take judicial notice that every such previous complaint has been dismissed.

Here, Plaintiffs allege that the National Rural Utilities Cooperative Finance Corporation ("**CFC**") is at the top of a hierarchy of enterprises.  Complaint at pg. 4.  Plaintiffs define certain entities as "CFC Control Persons."  *Id.*  Defendants are not included within the definition of CFC Control Persons.  *Id.*  Plaintiffs make conclusory allegations that CFC engaged in unspecified unlawful retaliatory acts directed at Prosser for the purpose of suppressing and discrediting him (defined in the Complaint as "Retaliatory Acts") and also directed such conduct at Benta.  Complaint at pgs. 4-5.  The Complaint alleges that CFC commenced lending to rural telephone companies through the Rural Telephone Finance Cooperative ("**RTFC**").  Complaint at pg. 4.  Plaintiffs allege that unspecified racketeering activities were conducted by certain RTFC Control Persons.  *Id.*  Again, Defendants are not included in the definition of RTFC Control Persons.  *Id.*

The Complaint asserts that a joint venture between RTFC and certain hedge funds (defined collectively as "Greenlight") was used by RTFC Control Persons to force Prosser and the entities under his control into bankruptcy.  Complaint at pg. 5.  The Complaint states "[o]n July 31, 2006, as a direct consequence of the Retaliatory Acts" involuntary petitions for bankruptcy were filed and four new "enterprises" were formed – the bankruptcy estates themselves that have been pending before this Court ever since the filing.  Complaint at pg. 6.  Importantly, all of this alleged conduct took place before this Court approved Defendants' role as professionals for the estate.  *See*

2

Complaint ¶¶2-20.  In any event, the Prossers have asserted these same claims of racketeering and corruption in a number of other proceedings, all of which were dismissed.[2]

### B.    This Court Has Already Made Findings Relating to the Allegations of the Complaint

The circumstances underlying the allegations in the Complaint arose over a decade ago. Set forth below is a summary of the relevant factual background, including this Court's prior findings that Defendants committed no wrongdoing with respect to the matters set forth in the Complaint.

### 1.    Plaintiffs' "Shoys Wine Fraud" Allegations

On February 9, 2011, this Court entered a turnover order (the **"Turnover Order"**) that required the Prossers to turn over their wine collection, including the Shoys Wines, to the Trustee. Complaint, ¶ 36.  Plaintiffs allege that the "Chapter 7 Professionals were authorized by the Turnover Order to only pick-up and secure all the Shoys Wines."  Complaint, ¶¶ 36, 67 (emphasis in original).  Plaintiffs define this limited authorization as the "Lawful Charge."  Complaint, ¶ 36. The Complaint alleges that Defendant Christie's, Inc. ("**Christie's**") and Trustee Carroll determined that the "Net Auction Proceeds" from the sale of the Shoys Wines were expected to be less than $200,000 or $100,000.  Complaint, ¶50, 54.  The Net Auction Proceeds for the sale of the Shoys Wines would be lower than wines stored in the continental United States because there

---

[2] *In re National Rural Utilities Cooperative Finance Corp.,* Adv. 09-52854, DE 180 (Bankr. DE, December 15, 2011) (dismissing Prosser's RICO claims and entering permanent injunction barring Prossers from again asserting claims); *see also In re National Rural Utilities Cooperative Finance Corp.*, Civ. Action No. 12-155 (D. DE, March 20, 2013); *Jeffrey J. Prosser v. Federal Agricultural Mortgage Corporation et al.*, Civil Case No. 08-cv-687 (D.D.C.).  Prosser also filed a complaint captioned as *Prosser v. Jefferson B. Sessions III*, Civ. Case No. 17-cv-01662 (D.D.C.) seeking mandatory injunctive relief against the Department of Justice ("**DOJ**") that would require DOJ to intervene in this bankruptcy case.  When the D.C. District Court dismissed the initial complaint, *Prosser v. Sessions*, 315 F. Supp. 3d 547 (D.D.C. 2018), Prosser filed an amended complaint.  The District Court then dismissed the amended complaint with prejudice, describing the complaint as "salacious allegations of corruption, fraud, and malfeasance." That dismissal with prejudice was affirmed on appeal.  *Prosser v. William P. Barr*, No. 19-5007 (D.C. Cir., May 2, 2019).

3

were fewer wines (Complaint, ¶40), transportation costs were higher (Complaint, ¶42), and because of certain customs issues (Complaint, ¶¶43-49). Plaintiffs then claim that because the bankruptcy estate would receive Net Auction Proceeds lower than anticipated, "Defendants decided to reject all the Shoys Wines, declare the Shoys Wines spoiled, and blame the Prossers for the loss. By doing so, Defendants could seek onerous sanctions against the Prossers (the "**Shoys Wines Fraud**")." Complaint, ¶54.

According to the Complaint, the Shoys Wine Fraud is established by a comparison of two Christie's emails referring to "wine packing materials." Complaint, ¶55. Plaintiffs do not connect why Defendants, in allegedly deciding to reject all the wines, sent emails concerning what wine packing materials to use. Plaintiffs then allege that, although Christie's representatives went to Shoys on July 29, 2011 to pick up the wine, Christie's actual intent was to reject the Shoys Wines. Plaintiffs assert that Christie's intent was established by: (i) the immediate on-site rejection of the wines; (ii) a discrepancy between whether Christie's required wines to be stored at 55° or 60°; (iii) a disagreement concerning whether the then-outside temperature in St. Croix was in the 90° range or 81°; (iv) an air conditioner that was unplugged in the room where the wine was stored; and (v) questions about whether the room contained broken wine bottles and bottles with leaking wine. Complaint, ¶66. Plaintiffs refer to the events surrounding the July 29, 2011 pick-up of the Shoys Wines as the "**July 29th Events**." *Id.* Christie's rejected the Shoys Wines at the time of this visit. Complaint, ¶66(f).

### 2. Plaintiffs' "Rogue VIPD Investigation Theory Implementation" Allegations

On August 4, 2011, Trustee Carroll filed his Motion to Enforce Turnover, for Contempt and for Sanctions in this Court asserting that the Shoys Wines were ruined (the "**Trustee's Contempt Motion**"). Complaint, ¶70. In response to the Trustee's Contempt Motion, Prosser

4

filed a motion requesting an evidentiary hearing regarding the July 29th Events ("**Evidentiary Hearing**").  On September 3, 2011, over a month after the July 29, 2011 rejection of the Shoys Wines, Benta "filed a police report of the July 29th Events with the Virgin Islands Police Department ("**VIPD**") on behalf of Pl JProsser."  Complaint ¶83 and Exhibit 2 to Complaint.[3]  An investigation was subsequently commenced by VIPD Officer Cuthbert Cyril, not Benta. Complaint ¶83. As part of the investigation, subpoenas were issued to employees of Christie's Wine Department in September 2011 and to the Trustee in November 2011. Complaint ¶92, 102.

Plaintiffs allege that certain Defendants attempted to thwart the investigation by what Plaintiffs define as the "Rogue VIPD Investigation Theory Implementation."  Complaint, ¶116. Yet, the two instances that Plaintiffs identify to support such a theory are far from actionable.  First, Plaintiffs take issue with the Trustee's filing of a Motion for a Protective Order in this Court to quash the subpoenas and deposition notice ("**Protective Order Motion**" or "**Motion for a Protective Order**"). Complaint, ¶110; Case No. 06-30009, DE 3485.  Plaintiffs contend that the Protective Order Motion called into question the legitimacy of the so-called investigation by, *inter alia*, attempting to discredit Office Cyril.  Complaint, ¶¶ 110, 69(f).  This Court may take judicial notice that on December 8, 2011, it conducted a hearing on the Motion for a Protective Order at which it took testimony.[4]  This Court denied the Motion for Protective Order as moot because the subpoenas were withdrawn.  06-30009, DE 3507.

The second act that Plaintiff's claim obstructed the investigation is based on a mere alleged suggestion by Defendant David Nissman ("**Nissman**"), acting as Christie's counsel, to Benta that

---

[3] Notably, the police officer who took Benta's report states: "I advised Mr. Benta that this was a civil matter and that it would have to be dealt with in civil court." Complaint, Exhibit 2. The responding officer wrote in the report that based on Benta's statements "I request this case be carried closed." Complaint, Exhibit 2.

[4] For example, an Assistant Attorney General testified at that hearing that the Attorney General's Office had no knowledge of a criminal investigation of the July 29th Events. Complaint, ¶116(a).

5

he terminate the investigation. Complaint, ¶116(b). Putting aside whether such conduct comes anywhere close to coercion, which it does not, the Complaint does not allege that Nissman suggested to Officer Cyril – the person actually conducting the purported investigation – that he terminate his efforts.

The Complaint admits that what Plaintiffs call the Shoys Wines Fraud "concluded" with this Court's September 18, 2012 Memorandum Opinion and Order (the "**Wine Sanctions Opinion**") [Adv. Pro. No. 07-03010, DE 1005 and 1006] and Order, which sanctioned the Prossers for the destruction of the Shoys Wines. Complaint, ¶120. The Complaint criticizes the Wine Sanctions Opinion for (1) accepting the opinion of an expert that the Shoys Wines were, in fact, ruined prior to Christie's arrival (Complaint, ¶120(b)); (2) referring to Benta as Prosser's employee, (Complaint, ¶82 (misnumbered para., p. 41)); and (3) excusing the unplugging of an air conditioner because the Shoys Wines were already destroyed and the unplugging only lasted 15 minutes. Complaint, ¶123.

Plaintiffs thereafter filed an appeal of the Wine Sanctions Opinion. Complaint, ¶124. While the appeal was pending, Plaintiffs claimed that certain facts emerged concerning the quality of the Shoys Wines and termination of Benta's employment (Complaint, ¶126), but they made no effort to supplement the record.[5] On February 23, 2017, the District Court affirmed this Court's imposition of sanctions. Complaint, ¶125.

In sum, in connection with a full evidentiary hearing and subsequent appeal of the Trustee's Contempt Motion, this Court and the District Court have already reviewed and considered

---

[5] The Complaint acknowledges that the Prossers were allowed an offset of the Sanctions Award for the Shoys Wines that were auctioned. The Court may take judicial notice that the wines were auctioned pursuant to this Court's Order entered on January 18, 2013 [06-30009, DE 4070] and that the auction took place on April 6, 2013 [06-30009, DE 4171] before the Appeal was decided.

6

Plaintiffs' instant allegations and determined that there was no liability on the part of Defendants for any of the alleged conduct complained of in the Complaint.

### C.    The District Court Has Previously Dismissed the Plaintiffs' Claims Against Defendants With Prejudice.

In an entirely separate proceeding, the District Court also made findings that the acts of which Plaintiffs complain in this litigation were all made by Defendants in their official capacities as professionals of the bankruptcy estate.  Despite the entry of the Wine Sanctions Opinion on September 18, 2012, Plaintiffs tried to advance their same claims, this time in the District Court.

 Indeed, on July 29, 2013, Plaintiffs filed a complaint in the District Court, captioned as *Benta et al. v. Christie's, Inc. et al.*, Civil No. 2013-0080 (D.V.I.) (the "**District Court Complaint**"), against Defendants Christie's, Charles Antin ("**Antin**"), Nissman, Yann Geron ("**Geron**"), Stassen and "certain un-named co-conspirators."  The Trustee and Fox were not named as defendants.  The Court should note that the filing of the District Court Complaint occurred shortly after two events adverse to Plaintiffs took place.

First, the Prossers were held in contempt by this Court and sanctions were assessed against them for approximately $1 million, based on, what this Court found, were egregious violations of at least three court orders in the Wine Sanctions Opinion.  Second, the Third Circuit Court of Appeals affirmed a multi-million dollar judgment entered on August 5, 2011 against Dawn Prosser after a trial in which Stassen was adverse counsel. *See Carroll v. Prosser*, Civil No. 08-147 (DE 80) (*aff'd, In re Jeffrey J. Prosser*, Appeal No. 12-2864 (3d Cir. August 1, 2013)).[6]

---

[6] Unfortunately, this is not the first time the Prossers have filed frivolous claims against counsel to the Trustee, following rulings which have gone against the Prossers in the bankruptcy case.  The first time involved a filing in the District Court of what was titled a "Motion for Evidentiary Hearing", which the District Court transferred to the Bankruptcy Court and which was dismissed at the pleading stage. *See Prosser v. Gerber*, 10-ap-03001, DE 63.

The Defendants named in the District Court Complaint filed motions to dismiss. *Benta v. Christie's, Inc.*, Civil No. 13-00080, DE 10 and DE 14.  In granting the motions pursuant to the *Barton* Doctrine, *Barton v. Barbour*, 104 U.S. 126 (1881); *In re VistaCare Group, LLC,* 678 F.3d 218, 224-25 (3d Cir. 2012), the District Court Found:

> The issue here is whether Defendants' actions that form the basis for this lawsuit fall within or outside their official duties.  The record before the Court leads to the conclusion that all Defendants were acting in their professional roles as agents of the Trustee when the events underlying the Plaintiffs' claims took place.

*Benta v. Christie's, Inc.*, Civil No. 13-00080, DE 55 at 17.

The District Court granted Plaintiffs' application to file an amended complaint based on Plaintiffs' request to add allegations of Defendants' conduct that Plaintiffs argued would fall outside their official roles—i.e., that were *ultra vires*.  *Id.* at 24.

On March 24, 2017, Plaintiffs filed an amended complaint in the District Court (the "**District Court Amended Complaint**").  The District Court Amended Complaint purported to add more claims against the defendants and added Trustee Carroll and Fox as defendants for the first time.  On June 21, 2021, the District Court dismissed the District Court Amended Complaint, again pursuant to the *Barton* doctrine.  The District Court found that:

> The significant relationship between the allegations in the Amended Complaint and matters previously raised in the bankruptcy proceeding further confirms the unmistakable connection between Plaintiffs' claims and the Trustee and his agents' bankruptcy-related functions. In short, as with Plaintiffs' original Complaint, the Amended Complaint fails to allege facts sufficient to fall within the ultra vires exception to the Barton doctrine.

*Benta v. Christie's, Inc.*, Civil No. 13-00080, DE 84, pg. 18.  Despite this Court's Wine Sanctions Opinion and despite the District Court's dismissal of both complaints, on July 20, 2021, Plaintiffs filed the instant Complaint in this Court, which they admit "essentially mirrors the Complaint recently dismissed in the District Court."  Complaint at pg. 3.

8

### D.       Plaintiffs' Allegations Concerning Defendants' Alleged Racketeering Acts and the Findings Of This Court.

The Complaint purports to assert RICO and CICO claims and claims for violations of constitutional and civil rights.  Plaintiffs' claims are deficient and insufficiently plead on a variety of grounds, as set forth below.  Specifically, the Complaint is scant on specific factual averments identifying actual conduct by Defendants supporting Plaintiffs' conclusory allegations of racketeering acts.   Plaintiffs allege that the RICO/CICO enterprise is the Jeffrey J. Prosser Bankruptcy Estate itself (defined as the "**JJP BK Estate**").  *Id.* at pg. 6.  Plaintiffs state that "[t]his litigation centers on only [that enterprise] and the events revolving around a single asset grouping: the St. Croix wine (the "**Shoys Wines**")."  *Id.*

What is clear is that the few specific factual averments in the Complaint involve conduct of Defendants committed within the scope of their representation of the Trustee in connection with this Court's contempt proceedings, as ruled by the District Court.  *Benta et al. v. Christie's, Inc. et al.*, Civil No. 2013-0080, DE 55 at 17.

Plaintiffs purport to identify the alleged racketeering acts included in the "Shoys Wine Fraud."  Complaint, ¶132.  For example, Plaintiffs allege that the Court-Appointed Chapter 7 Professionals' acted outside their "Lawful Charge" to collect and transport the Shoys Wines and, thus, the Shoys Wine Fraud is unlawful and violated 18 U.S.C. § 153 (Embezzlement against estate).  Complaint, ¶¶36, 65.  In other words, Plaintiffs allege that Defendants were not authorized to reject the Shoys Wines regardless of their condition.  The Prossers made the same argument to this Court during a prior proceeding, and this Court expressly rejected it in the Wine Sanctions Opinion, stating:

> With the agreement of counsel for the Prossers, the Chapter 7 Trustee directed representatives of Christie's to go to the Shoys Estate on July 29, 2011, to pick up and ship the Wines stored there for sale.  Christie's reserved the right to physically inspect the Wines prior to taking them for sale.

Wine Sanctions Opinion at p. 17.  Moreover, this Court found that Christie's was justified in

rejecting the Shoys Wines as unmarketable:

> The court finds that the Prossers [disobeyed the Court's orders] . . . by failing to
> maintain (or to make reasonable efforts to maintain) the remaining Wines at the
> Shoys estate in a protected, light and temperature controlled environment (as they
> were stored in 2008) such that they became unmarketable by Christie's.

Wine Sanctions Opinion at pgs. 24-25.  Thus, this Court found that the Shoys Wines were already

destroyed by the Prossers before July 29, 2011.  *Id.*

Plaintiffs' contention that Christie's, through Antin, made certain false statements in his

August 4, 2011 Declaration (Complaint, ¶66(z)) is a misguided attempt to distract this Court from

its previous rulings.

Apart from the fact that Plaintiffs' own Complaint admits the truth of each of these

statements, this Court found, after a full evidentiary hearing, that the Shoys Wines were ruined by

the storage conditions existing *before* Christie's even inspected the wines.  Wine Sanctions

Opinion at p. 19 n.24.

The Complaint alleges that the unplugging of an air conditioner was a violation of 18

U.S.C. §153.  Complaint, ¶132(a).  Yet, this Court specifically found that Christie's reserved the

right to inspect the wine and that the unplugging of the air conditioner caused no damage to estate

property because "the lack of soundness of the Wines could not have been caused by the air

conditioner being unplugged for 15 minutes, that the Wines must have 'suffered bad storage for a

few years.'"  Wine Sanctions Opinion at p. 19 n.24.

Plaintiffs also allege in conclusory fashion that the Court-Appointed Chapter 7

Professionals knowingly made false statements to this Court in the Trustee's Contempt Motion;

the Evidentiary Hearing concerning that Motion; and in the Protective Order Motion.  Complaint,

10

¶132(b)(d)(f) and (h).  However, the only specific factual allegations offered in support are that:
(1) Geron, while representing the Trustee, represented to this Court that "[w]e have assured
ourselves **by discussing this with Christie's** that the allegation [of unplugging the air conditioner]
certainly insofar as the trustee is concerned are (sic) wholly untrue and that will prove itself up in
connection with the hearings that are currently set up,"  (Complaint, ¶84, emphasis in original);
and (2) Geron represented to the Court that "we have one affidavit by Chief Benta who as I said is
on Mr. Prosser's payroll." Complaint, ¶85.[7]

With regard to Stassen, the only specific factual averments are that: (1) Stassen argued to
the Court that "[t]here's no evidence, there is **no good faith basis**, for the Prossers to make the
assertions that they have been asserting with regard to the trustee and the so-called desire to destroy
the wine" Complaint ¶90 (emphasis in original); (2) Stassen presented Assistant Attorney General
Carol Thomas-Jacobs as a witness in court and she represented that the Virgin Islands Attorney
General's Office had no knowledge of a criminal investigation of the "July 29, 2011 incident,"
Complaint ¶¶116;[8] and (3) during a break in a deposition, Stassen allegedly said to Mr. Prosser
"your little friend has gotten himself into trouble he cannot get out of."  Complaint, ¶113.  The

---

[7]  The Complaint several times takes issue with whether or not Benta was Prosser's employee and faults this Court for stating in the Wine Sanctions Opinion that Benta was the Debtor's employee.  Complaint, ¶¶ 86, 132. However, the Complaint admits that Benta "was an employee of ICC" (Complaint, ¶27); "Benta is considered a Prosser Associate" (Complaint, ¶29); Prosser controlled ICC-LLC (Complaint, p. 6); the ICC Chapter 11 Bankruptcy Estate is part of the defined term "Chapter 11 Estates" (*Id.*); Prosser was "an owner or beneficial owner of the Chapter 11 Estates, (Complaint, ¶30) and; Benta acted as the Prossers' representative, (Complaint, ¶68).  Further, the September 3, 2011 police report (Complaint, Ex. 2) states that Benta informed the responding officer that "he was the one responsible for the [Shoys] property owned by Mr. Jeffrey Prosser."

[8]  Plaintiffs state in conclusory fashion that this testimony was false, but provide no specific allegations demonstrating the alleged falsity of the testimony.  Further, Plaintiffs do not quote Ms. Thomas-Jacobs' testimony in the Complaint. The Court may take judicial notice that she testified "[t]he management was not aware of any criminal investigation relating to the trustee or anything that may be the subject of any bankruptcy proceeding …." 06-30009, DE 3522 at 6. Ms. Jacobs informed the Court that the Attorney General's Office would prefer that the Court note that the subpoena was withdrawn.  *Id.* She further informed the Court in response to the Court's question that she did not believe it is the responsibility of the training bureau [where officer Cyril worked] to conduct investigations and the Attorney General's Office is investigating the matter of how the subpoena was issued. *Id.*

11

alleged statements by Geron and Stassen are irrelevant because this Court found the Prossers destroyed the Shoys Wines – not the Trustee.

In addition, Plaintiffs baldly assert that the Rogue VIPD Investigation Theory Implementation resulted in the intimidation of witnesses (Complaint, ¶132(i)), unlawful retaliation against Benta (Complaint, ¶132(j)), and the imposition of illegal sanctions. Complaint, ¶132(k). Yet, the Complaint is devoid of any specific allegations to support these contentions. Moreover, the sanctions that Plaintiffs call illegal were imposed by order of this Court, which was affirmed on appeal. *See Springel v. Prosser*, Case No. 3-cv-0010, DE 64. Finally, the Complaint contains no specific allegations of racketeering acts by Trustee Carroll. The best Plaintiffs can do is assert that "[o]n information and belief," Trustee Carroll filed a false criminal complaint (Complaint, ¶77), which has been disproven by prior court decisions.[9]

## LEGAL ARGUMENT

## I.   PLAINTIFFS' ACTION SHOULD BE DISMISSED AS TO THE TRUSTEE AND HIS AGENTS ON THE GROUNDS OF JUDICIAL IMMUNITY

The allegations of the Complaint concern acts taken by Defendants, the Trustee and his agents, within the scope of their professional duties of the bankruptcy estate and pursuant to court order. The District Court expressly found that Defendants were acting in the scope of their duties as estate professionals in its dismissal of Plaintiffs' District Court Complaint and the District Court

---

[9] "Trustee Carroll denies that he filed a criminal complaint as alleged. However, even if the Court must assume that such a complaint was filed, the assertion that such a complaint was "false" is disproven by the Complaint itself and this Court's findings. Plaintiffs allege that the complaint alleged the "substance of the facts set forth in Antin's July 29, 2011 Team Email. Plaintiffs chose not to attach the email to the Complaint, instead describing the Team Email. Complaint ¶¶ 54 and 66(q). The description merely alleges that Trustee Carroll intended to seek sanctions against the Prossers for the destruction of the Shoys Wines, Complaint ¶ 54, and that Trustee Carroll allegedly told Antin that all the Shoys Wines were ruined as a result of an intentionally malicious act – that the cooling units were turned off. Complaint ¶ 66(q). As discussed *supra*, sanctions were in fact sought, and awarded, against the Prossers for the destruction of the Shoys Wines. Further, this Court found that one of the air conditioning units "was not functioning" and that the other "wasn't an effective cooling device" – blowing "tepid air." Wine Sanctions Opinion at pgs. 18-19.

Amended Complaint, the latter of which contained the very same claims as the instant Complaint. As such, the Complaint should be dismissed as to the Defendants on the grounds of absolute immunity.

There is near universal agreement that bankruptcy trustees are entitled to judicial immunity from personal liability for acts taken within their authority as court officers. *In re J & S Props., LLC*, 545 B.R. 91, 94 (Bankr. W.D. Pa. 2015) (citations omitted). When acting pursuant to an order of court, a bankruptcy trustee is generally afforded absolute immunity. *Id.*; *see also Howard v. Leonard*, 101 B.R. 421, 423 (D.N.J. 1989) ("absolute immunity has been specifically conferred on trustees in bankruptcy…as long as he does not act in the clear absence of all jurisdiction, or at least acts under the supervision of the bankruptcy judge") (citations omitted). The instances in which a bankruptcy trustee may be sued in his or her individual capacity are limited to wrongful acts which exceed the scope of his or her authority—i.e., a bankruptcy trustee may be personally liable for wrongful acts that are *ultra vires*. *In re J & S Properties*, 545 B.R. at 105 (citations omitted).

The other Defendants, beyond Trustee Carroll, are also entitled to judicial immunity as the doctrine of judicial immunity also applies to court approved attorneys for the trustee. *See In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009) (determining trustee and attorneys are entitled to judicial immunity). As court-appointed attorneys and professionals, Defendants are each entitled to the same immunity as Trustee Carroll.

To have immunity, Defendants must establish that: (1) the acts were within the scope of their authority; (2) the debtor had notice of the proposed acts; (3) Defendants candidly disclosed the proposed acts to the bankruptcy court; and (4) the bankruptcy court approved Defendants' proposed acts. *See In re Summit Metals, Inc.*, 477 B.R. 484, 501 (Bankr. D. Del. 2012) (*citing In*

13

*re Harris*, 590 F.3d at 742); *see also LeBlanc v. Salem* (*In re Mailman Steam Carpet Cleaning Corp.*), 196 F.3d 1, 8 (1st Cir. 1999) ("[A] trustee acting with the explicit approval of a bankruptcy court is entitled to absolute immunity, as long as there has been full and frank disclosure to creditors and the court.").

Defendants acted within the scope of their authority with respect to the conduct alleged in the Complaint, as they were acting pursuant to the Court's February 9, 2011 Turnover Order. The District Court previously determined that Defendants were not acting *ultra vires* when it dismissed the District Court Complaint and the District Court Amended Complaint, which contains the same allegations as the Instant Complaint.[10] As set forth by the District Court:

> The issue here is whether Defendants' actions that form the basis for this lawsuit fall within or outside their official duties. The record before the Court leads to the conclusion that all Defendants were acting in their professional roles as agents of the Trustee when the events underlying the Plaintiffs' claims took place.

*Benta et al. v. Christie's, Inc. et al.*, Civil No. 2013-0080, DE 55 at 17. Accordingly, the Court should find that Defendants have immunity and the Complaint should be dismissed.

This Court previously determined that the Trustee was afforded immunity from personal liability with respect to Prosser's motion to compel reimbursement for alleged estate losses resulting from what the Prossers argued was a commercially unreasonable sale of a painting. Despite Prosser's contention that the Trustee did not provide adequate information to the Court regarding the painting, this Court determined that the Trustee acted in compliance with a court order "requir[ing] the Trustee to file and serve a sale notice containing 'any ... information material to the sale or a description of where such information can be obtained by an interested purchaser'"

---

[10] On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court is free to take judicial notice of certain facts that are of public record if they are provided to the court by the party seeking to have them considered. *Taha v. I.N.S.*, 828 F. Supp. 362, 364 n. 6 (E.D. Pa. 1993).

and was afforded absolute immunity. *In re Prosser*, 2016 WL 4821261, at *3 (Bankr. D.V.I. Sept. 8, 2016).

Even if the Court were to determine that Defendants did not act expressly pursuant to court order, the Court should still find that Defendants are afforded qualified immunity because their conduct was designed to safeguard estate property. In *In re J&S Props.*, the bankruptcy court determined that a trustee's actions in changing the lock on certain estate real property to gain access to water-damaged areas was not *ultra vires*, even though that action was taken absent court order. *See* 545 B.R. at 107-08. Finding that there was "no credible evidence permitting any plausible inference that [the trustee] engaged in any fraudulent conduct, or that she acted with any malice or ulterior motive," the court held that the trustee was protected by qualified immunity for "exercising her business judgment" with respect to her duty to secure and preserve estate property. *Id*. at 108.

Similarly here, Defendants' actions were taken for the purpose of collecting estate property, consistent with the Trustee's statutory duties. There have been no findings by this Court or the District Court that any of the Defendants engaged in any fraudulent conduct. To the contrary, the Prossers articulated their theories of misconduct to this Court, which soundly rejected them in the Wine Sanctions Opinion. Accordingly, the Court should find that Defendants are afforded immunity and should dismiss the case with prejudice – particularly as the Complaint is the third attempt by Plaintiffs to assert their claims.

## II.     PLAINTIFFS' ACTION IS BARRED BY THE APPLICABLE STATUTES OF LIMITATION

This Court should also dismiss the Complaint on the ground that the asserted claims are barred and subject to dismissal by all applicable statutes of limitations. Plaintiffs' claims relate to acts allegedly committed no later than 2011, a decade ago at the very latest. *See* Complaint, ¶¶

15

36-116.  Because each of the claims are time-barred and because equitable tolling and the relation

back doctrine do not apply, the Complaint should be dismissed in its entirety.

A.     **Plaintiffs' First and Second Causes of Action Are Barred By The Applicable Statutes of Limitation**

Plaintiffs' first and second causes of action, under RICO §§ 1962(c) and (d), are subject to

dismissal because they are barred by the applicable four year statute of limitations.  In these causes

of action, Plaintiffs allege that the so-called "Shoys Wine Fraud" and "Rogue VIPD Investigation

Theory Implementation" – all of which allegedly took place in 2011 – resulted in RICO violations.

To be timely, Plaintiffs' RICO claims needed to be asserted in 2015 at the very latest.

The Supreme Court of the United States has held that civil RICO claims have a four year

statute of limitations.  *See Agency Holding Corp. v. Malley Duff & Assocs., Inc.*, 483 U.S. 143,

156 (1987); *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 232–33 (3d Cir. 2004)

("Although the RICO statute does not expressly provide a statute of limitations, the Supreme

Court, by analogy to the Clayton Act, has established a four-year limitations period for

civil RICO claims") (*citing Agency Holding Corp.,* 483 U.S. at 156).

The four year statute of limitations for civil RICO claims begins to accrue from the time

the plaintiff knew or should have known of their injury.  *Prudential*, 359 F.3d at 233-234. The

Supreme Court has expressly rejected accrual based upon a "last predicate act" or "pattern

discovery" feature.  *Rotella v. Wood*, 528 U.S. 549, 554-59 (2000).  Here, all of Plaintiffs'

allegations underlying their RICO claims relate to acts committed in 2011, and reading Plaintiffs'

allegations generously, Plaintiffs knew (or should have known) of their alleged injuries by the end

of 2011. Therefore, Plaintiffs must have asserted their civil RICO claims by no later than the end

of 2015.  Plaintiffs' RICO claims are, at a *minimum*, almost six years too late.  *See, e.g., Kadonsky

v. New Jersey*, 188 F. App'x 81, 85 (3d Cir. 2006) (dismissing civil RICO claims on statute of

16

limitations grounds because "Kadonsky knew or should have known of his injury at the time money was seized in 1994.").

### B.    Plaintiffs' Third and Fourth Causes of Action Are Barred By The Applicable Statutes of Limitation

Plaintiffs' third and fourth causes of action, CICO claims under Title 14 of the Virgin Islands Code §§ 605(a) and (d), are subject to dismissal because they are barred by the applicable five year statute of limitations.  Just like Plaintiffs' first and second causes of action, the third and fourth relate to the alleged "Shoys Wine Fraud" and "Rogue VIPD Investigation Theory Implementation" – all of which are cabined to allegations of conduct in the year 2011.

Virgin Islands Code, Title 14, § 607(a) states, in no uncertain terms, that "a civil proceeding or action under this section may be commenced within five years after the conduct made unlawful under section 605, or when the cause of action otherwise accrues or within any longer statutory period that may be applicable."; *see also In re Equivest St. Thomas, Inc,* 53 Bankr. Ct. Dec. 260, 2010 WL 4343616, at *5 (Bankr. D.V.I. Nov. 1, 2010) ("CICO claims are subject to a five-year statute of limitations period. 14 V.I.C. § 607(h)."); *Charleswell v. Chase Manhattan Bank, N.A.*, 2009 WL 1850650, at *7 (D.V.I. June 24, 2009) (same).  Here, all of Plaintiffs' allegations underlying their CICO claims relate to acts committed in 2011, and therefore Plaintiffs must have asserted such claims by no later than the end of 2016.  Plaintiffs' CICO claims are, at a *minimum*, almost five years too late.

### C.    Plaintiffs' Fifth and Sixth Causes of Action Are Barred By The Applicable Statutes of Limitation

Plaintiffs' fifth cause of action (by Benta) and sixth cause of action (by the Prossers) allege that Defendants' conduct violated 42 U.S.C. §§ 1985 (1) and (2), and constitute defamation.

To the extent Plaintiffs' fifth and sixth causes of action are premised on Sections 1985 (1) and (2), they are barred by the applicable two year statute of limitations.  The Third Circuit has

17

held that "claims brought pursuant to § 1983 or § 1985 are subject to the state statute of limitations for personal injury actions" and accrues "when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action." *Ormsby v. Luzerne Cty. Dep't of Pub. Welfare Off. of Hum. Servs.*, 149 F. App'x 60, 62 (3d Cir. 2005).  In the Virgin Islands, personal injury actions are subject to a two-year statute of limitations and this statute of limitations therefore applies to claims under Sections 1983 and 1985.  *See Lockhart v. Gov't of Virgin Islands,* 2009 WL 812266, at *3 (D.V.I. Mar. 26, 2009) (stating that the Virgin Islands has a two-year statute of limitations for personal injury claims, and applying such a statute of limitations to a Section 1983 claim).

The allegations underlying Benta's fifth cause of action for violations of Section 1985 center around "causing his termination from his position as a Virgin Islands Police Officer" and "deterring Oakland Benta through intimidation, from testifying freely as a witness[.]"  *See* Complaint, ¶¶ 175-177.  These factual allegations relate solely to alleged conduct in 2011, and a recommendation for Benta's termination was also submitted in 2011 (*see* Exhibit 9 to Complaint). Therefore, even under a favorable reading of Plaintiffs' allegations, Benta would have had to bring a claim under Section 1985 by, at the very latest, the end of 2013, since Benta knew or should have known of his alleged injury by the end of 2011.  Benta's claim under Section 1985 is almost eight years too late.

The allegations underlying the Prossers' sixth cause of action for violations of Section 1985 center around alleged witness intimidation – factual allegations that relate solely to alleged conduct in 2011.  Therefore, even by the most favorable reading of Plaintiffs' allegations, the Prossers would have had to bring a claim under Section 1985 by, at the very latest, the end of 2013, since

they knew or should have known of their alleged injuries by the end of 2011.  Just like Benta's claim, the Prossers' claims under Section 1985 are time-barred by almost eight years.

To the extent Plaintiffs' fifth and sixth causes of action allege defamation, the claims are likewise barred by the statute of limitations.  Defamation claims are subject to a two-year statute of limitations.  *See* V.I. Code, Tit. 5, §  31 (5)(A).  The factual allegations underpinning Plaintiffs' defamation claims are – like all of their other claims – limited to alleged conduct during 2011.  Therefore, Plaintiffs' defamation claims must have been asserted – at the very latest – by the end of 2013. For these reasons alone, Plaintiffs' fifth and sixth causes of action fail and must be dismissed.

### D.    Equitable Tolling Does Not Apply

To the extent that Plaintiffs claim that the filing of the District Court Complaint or District Court Amended Complaint somehow entitles them to equitable tolling of the applicable statute of limitations, this Court should disregard that argument.  First, the District Court Complaint did not include RICO or CICO claims and asserted no claims against Carroll or Fox. Such claims were not asserted until the filing of the District Court Amended Complaint on March 24, 2017 – long after the statute of limitations expired.

Second, equitable tolling applies when a plaintiff has "been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). This occurs where, *inter alia*, "plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Robinson v. Dalton,* 107 F.3d 1018, 1022 (3d Cir. 1997).  The plaintiff, however, must "***exercise due diligence in preserving his claim***." *Irwin v. Dep't of Veterans Affair*s, 498 U.S. 89, 96 (1990) (emphasis added).  Equitable tolling is an extraordinary remedy which should be extended only sparingly. *Id.*; *see also Barren by Barren v. United States*, 839 F.2d 987, 992 (3d Cir. 1988) ("limitations periods must be strictly construed").

19

Plaintiffs failed to exercise due diligence in preserving their claims, ignoring a number of opportunities to preserve their claims in this Court. When Plaintiffs first filed their Complaint in the District Court on July 29, 2013, they were immediately put on notice by the motion to dismiss filed by Stassen and Geron that their claims were asserted in a court with no subject matter jurisdiction. *Benta v. Christie's, Inc.*, Civil No. 13-00080, DE 9-10. Plaintiffs could have and should have exercised reasonable "due diligence" and filed their claims in this Court by, at the very latest, the end of 2013 or sought a tolling agreement. Instead, Plaintiffs made the strategic decision to avoid this Court and to only assert their claims in the District Court. After the District Court dismissed their Complaint, Plaintiffs did not "mistakenly" file the District Court Amended Complaint. They again made the purposeful and strategic decision to avoid this Court. Plaintiffs' informed decision to not preserve their claims in this Court precludes an equitable tolling of the statute of limitations.

To be sure, as pro se plaintiffs, Benta and Dawn Prosser are not excused from the applicable statute of limitations. *See Hedges v. United States*, 404 F.3d 744, 753 (3d Cir. 2005) (equitable tolling did not apply to plaintiff's claims merely because of plaintiff's *pro se* status because procedural rules do not "excuse mistakes by those who proceed without counsel") (*quoting McNeil v. United States,* 508 U.S. 106, 113 (1993)). Plaintiffs' claims are untimely and not excused by the doctrine of equitable tolling.

### E.    The Relation Back Doctrine Does Not Apply

To the extent Plaintiffs attempt to rescue their stale claims by relying on their prior dismissed lawsuit in the District Court to invoke the "relation back" doctrine, this effort should also be swiftly rejected. The Complaint is a standalone, new pleading; it is not an amended complaint.

20

The law is clear that "when an action is dismissed without prejudice, a separate, subsequently filed action does not relate back to the date of the first action's filing." *Gonzalez v. Portfolio Recovery Assocs., LLC*, 2013 WL 5334075, at *2 (D.N.J. Sept. 20, 2013); *see also Jones v. Bull Moose Tube Co.*, 2010 WL 1781710, at *5 (N.D. Ill. Apr. 26, 2010) ("relation back does not apply to complaints dismissed without prejudice."). As the *Jones* court stated, "once a complaint is dismissed without prejudice, it is as if the complaint had never been filed . . . Thus, the statute of limitations continues to run as if the complaint was never filed. The "relation back" doctrine does not apply because…there is nothing to which the complaint can relate back." *Id.*; *see Jarbo v. U.S. Suburban Bldg. Servs., Inc.*, No. CV 15-14458, 2017 WL 3262420, at *5 (E.D. Mich. July 5, 2017) (holding that "relation back" doctrine "only applies to attempts to amend an existing complaint, and does not apply where a prior action has been dismissed"). Moreover, the District Court Complaint did not even include Trustee Carroll and Fox as defendants and did not include any RICO or CICO claims, so the relation back doctrine could not apply to claims against these parties or for the RICO/CICO claims.

## III.    PLAINTIFFS' ACTION IS BARRED BY COLLATERAL ESTOPPEL

Plaintiffs' entire action is barred in total for another reason – the issues that Plaintiffs seek to litigate have already been decided and are therefore precluded by collateral estoppel/issue preclusion. Plaintiffs' claims are almost entirely premised around allegations surrounding what Plaintiffs refer to as the "St. Croix Wine Incident." As summarized above, Plaintiffs allege that "Defendants decided to reject all of the Shoys Wines, declare the Shoys Wines spoiled, and blame the Prossers for the loss." *See* Complaint, ¶54. However, in the Wine Sanctions Opinion, this Court already made several findings of fact and holdings that dispel the very "Shoys Wine Fraud" that serve as the basis for all of Plaintiffs' claims. Accordingly, this entire action is barred by collateral estoppel.

21

Under Third Circuit law, collateral estoppel applies when: (1) the identical issue was previously adjudicated, (2) that issue was actually litigated, (3) the previous determination was necessary to the decision and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006). Plaintiffs are collaterally estopped from pursuing their claims. In the Wine Sanctions Opinion, this Court found the Prossers in violation of court orders and in civil contempt of court, and awarded Trustee damages. In rendering the Wine Sanctions Opinion, the Court made the following findings of fact:

1.  Christie's reserved the right to physically inspect the Shoys Wines prior to taking them for sale. (Wine Sanctions Opinion at pg. 17) (this finding alone dispenses with Plaintiffs' "Lawful Charge" allegations, Complaint ¶¶ 36, 65, a cornerstone of their Complaint);

2.  That Christie's did not remove the wines from the Shoys Estate because the condition of the bottles and their storage rendered them not marketable through Christie's (Wine Sanctions Opinion at pg. 17) (this finding eliminates Plaintiffs' contention that Christie's rejected the wine because the cost of transportation and customs expenses would make the sale less profitable);

3.  That the wines were not sufficiently cooled, were warm to the touch and the air being blown into the room was "tepid" (Wine Sanctions Opinion at pgs. 18 - 19);

4.  That Christie's refused to sell Wines from Shoys Estate due to their storage conditions (Wine Sanctions Opinion at pg. 18, n. 23);

5.  That the storage conditions of the wine between 2008 and 2011 were "completely different" (Wine Sanctions Opinion at pg. 19);

22

6. That the unplugging of one "semi-functioning air conditioner in the Outbuilding", which was plugged back in after 15 minutes by Plaintiff Benta, **did not cause any additional damage to the wines** and that the damage to the wines could not have been caused by an air conditioner being unplugged for 15 minutes, and would have needed to suffer bad storage for "a few years" (Wine Sanctions Opinion at pg. 19, n. 24);

7. That "there is no sound evidence to prove that a break-in did in fact occur at the Shoys Estate" and that "failure to prevent a theft of the Wines is still a violation of this court's orders, and not an appropriate defense." (Wine Sanctions Opinion at pg. 22, n. 30);

8. That Ms. Ewing-Mulligan, the Court-approved wine expert, who examined the Shoys Wines and testified at the Sanctions Hearing, "made a good faith effort to recover Wines that were marketable but she was unable to find any such bottles due to the improper storage conditions and indicators of external damage to the wines (Wine Sanctions Opinion at pg. 123); and

9. That the Prossers "flagrantly disobeyed [court orders] by dissipating (or permitting the dissipation of) approximately 52% of the inventoried 905 bottles of Wine at the Palm Beach Property, dissipating (or permitting the dissipation of) approximately 46% of the inventoried 980 bottles of Wine at the Shoys Estate, and by failing to maintain (or to make reasonable efforts to maintain) the remaining Wines at the Shoys Estate in a protected, light and temperature controlled environment (as they were stored in 2008) such that they became unmarketable by Christie's." (Wine Sanctions Opinion at pgs. 24-25).

In other words, the Court already made specific findings of fact conclusively establishing that the Prossers were responsible for the spoilage of the Shoys Wines, and that Christie's rightfully determined that the wines were not marketable as a result of the Prossers' actions. A court has

23

already determined and ruled upon what precisely happened in the so-called "Shoys Wine Fraud" and July 29th Events of almost ten years ago – and sanctioned the Prossers as a result. Plaintiffs now seek to relitigate the very same events, rebranding the claims as a "fraud" on the part of Defendants here. This Court should not countenance such an abuse of process.[11]

There is no dispute that the Court's findings of fact were previously adjudicated, actually litigated (with expert testimony, as well), were necessary to the Court's decision to sanction the Prossers, and rendered in a proceeding in which the Prossers were fully represented. Accordingly, the entirety of Plaintiffs' action is barred by collateral estoppel.

## IV.    PLAINTIFFS FAIL TO ADEQUATELY PLEAD RICO CLAIMS

By asserting civil RICO claims, Plaintiffs must not only satisfy the general pleading requirements of Rule 8 by alleging facts sufficient to create a "reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), they must also satisfy the heightened standards set forth in Rule 9(b). "Adherence to Rule 9(b)'s pleading standard is 'particularly important in civil RICO pleadings in which the predicate racketeering acts are critical to the sufficiency of the RICO claim.'" *Rothberg v. Marger*, CIV. 11-5497 RBK/KMW, 2013 WL 1314699, at *10 (D.N.J. Mar. 28, 2013) (quoting *Balthazar v. Atlantic City Med. Ctr.*, 279 F.Supp.2d 574, 591 (D.N.J. 2003)).

At the Rule 12 stage, RICO claims are subject to close scrutiny. "[B]ecause the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants," courts "should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990); *see also Ambrosia Coal*

---

[11] Defendants reserve the right to make a separate application to this Court for sanctions, an anti-suit injunction and/or any other related relief based on Plaintiffs' insistence, through this action, to litigate claims that have already been litigated upon and decided.

& *Constr. Co. v. Page Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (civil RICO claims must be

pled with an increased level of specificity under Rule 9(b)). As discussed below, Plaintiffs

allegations fall woefully short of the pleading standards to maintain RICO claims.

### A.    Plaintiffs' RICO Claims Fail for Lack of Statutory Standing

The RICO statute provides a private right of action only if the plaintiff is "injured in his

business or property by reason of" a predicate act.  18 U.S.C. § 1964(c); *see also Sarpolis v.*

*Tereshko*, 26 F. Supp. 3d 407, 424 (E.D. Pa. 2014) (citing 18 U.S.C. § 1964(c) and *Maio v. Aetna,*

*Inc.*, 221 F.3d 472, 482-83 (3d Cir. 2000)) ("To bring a RICO claim, a plaintiff must satisfy two

statutory elements to confer standing:  (1) that she suffered an injury to her 'business or property';

and (2) that her injury was proximately caused by the defendants' violation of § 1962.").  These

are "related but analytically distinct threshold showings."  *Maio*, 221 F.3d at 483.  Thus, to

establish statutory standing under RICO, a plaintiff must show "that a RICO predicate offense 'not

only was a but for cause of his injury, but was the proximate cause as well.'"  *Hemi Grp. LLC v.*

*City of N.Y.*, 559 U.S. 1, 9 (2010) (plurality opinion) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503

U.S. 258, 268 (1992)).  Here, Plaintiffs have completely failed to allege facts necessary to satisfy

this standard, both as to injury and to causation.

### i.    Plaintiffs Have Not Alleged a Cognizable Injury to Their Business or Property

For purposes of a civil RICO claim, "[i]njury to business or property requires a 'concrete

financial loss and not mere injury to a valuable intangible property interest.'"  *Sarpolis*, 26 F. Supp.

3d at 424 (quoting *Maio*, 221 F.3d at 483).  The out-of-pocket loss to the plaintiff must be

ascertainable.  *Id.* (citing *FL Receivables Trust v. Bagga*, Civ. A. No. 03-5108, 2005 WL 563535,

at *3 (E.D. Pa. Mar. 8, 2005)).  Injuries that are speculative or contingent on future events are

insufficient.  *Id.* (citing *FL Receivables Trust*, 2005 WL 563535, at *4)).  "It is well-established

25

that injuries to goodwill and reputation are not only speculative, but are simply not the types of injuries compensable under RICO." *Id.* at 426 (citing *Knit With v. Knitting Fever, Inc.*, CIV.A. 08-4221, 2012 WL 2938992 (E.D. Pa. July 19, 2012)); *accord Ketner v. Widell*, No. 5:20-cv-6360, 2021 WL 2808829, at *3 n.3 (E.D. Pa. July 6, 2021).

Plaintiffs have not alleged any specific injury of any kind in support of their RICO claims, much less the requisite concrete financial loss to their business or property. Indeed, Plaintiffs do not even allege that they paid any portion of the sanctions entered against them – nor could they as they have wholly ignored this Court's orders. The only references to Plaintiffs having "injuries" or being "injured' in the entire 60-page Complaint appear between pages 50 and 59, where the causes of action are set forth. For each of the four RICO causes of action alleged, the Complaint enumerates the same boilerplate recitals as to injury, namely that each of the Plaintiffs has been "injured by reason of the violation[s]" of RICO and is therefore entitled to sue, and that each seeks "treble damages [s]he has suffered as a result of the Shoys Wine Fraud coupled with the Rogue VIPD Investigation Theory Implementation; such damages may be determined by a jury" as well as costs and fees. *See, e.g.*, Complaint, ¶¶ 151 & 152 (setting forth these recitals as to the First Cause of Action, RICO Act § 1962(c)).

The requirement that courts accept all well-pled factual allegations to be true when considering a motion to dismiss is well-settled. *See St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 299 (3d Cir. 2020) (citing *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009)). "[B]oilerplate allegations mimicking the purported legal standards for liability," however, are not assumed to be true. *Argueta v. U.S. Immigr. & Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011). Here, that is all Plaintiffs have offered, having failed to plead facts that would tend to support the existence of the alleged injuries or even attempt to quantify the out-of-pocket loss

127609083.2

they allegedly suffered as a result.  Each RICO count alleged seeks damages to be determined by

a jury, which alone demonstrates Plaintiffs' lack of standing.  In the absence of factual support,

the Complaint's barebones assertions of injury amount to a "formulaic recitation" of the injury

element of a RICO claim and are utterly insufficient to establish a cognizable injury necessary to

confer statutory standing.

### ii.    Plaintiffs Have Not Plausibly Alleged Causation

Even if Plaintiffs' naked assertions that they were injured by Defendants' alleged RICO

violations were sufficient to state a cognizable injury to their business or property—and they are

not—Plaintiffs have not plausibly alleged that such injuries were directly caused by Defendants'

alleged predicate acts in connection with the so-called Shoys Wine Fraud or Rogue VIPD

Investigation Theory Implementation.   "When a court evaluates a RICO claim for proximate

causation, the central question it must ask is whether the alleged violation led directly to the

plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  The Third Circuit

has recognized "'that in the RICO context, the focus [of proximate causation] is on the directness

of the relationship between the conduct and the harm' rather than 'the concept of foreseeability.'"

*St. Luke's Health Network, Inc.*, 967 at 300 (quoting *Hemi Grp.*, 559 U.S. at 12).  The relationship

between the conduct and the harm must be direct, not remote or purely contingent.  *Id.* at 457

(citing *Holmes*, 547 U.S. at 271).

Plaintiffs claim that Defendants committed several racketeering acts allegedly constituting

various bankruptcy-related crimes, as well as obstruction of justice, wire fraud, and extortion.  *See*

Complaint, ¶¶ 132 – 135.  As previously stated, the Complaint lacks any allegations as to a specific

injury, which in turn makes it impossible to sufficiently plead proximate cause.  The Complaint is

devoid of any allegation that a predicate act was the cause of any tangible injury.  Plaintiffs seem

to have relieved themselves of their burden to plead causation, at least as to the alleged bankruptcy

27

crimes, by informing the Court, via footnote, that "[b]ankruptcy crimes are not concerned with individual loss or even whether certain acts caused anyone particularized harm." Complaint, 2 n.2 (quoting 1-7 Collier on Bankruptcy P 7.01 (16th ed. 2016)).  Unfortunately for Plaintiffs, the case law makes clear that federal courts are concerned with precisely that question, so much so that injury and causation are threshold issues for RICO claims.  The Complaint contains no allegations plausibly showing that any of the alleged racketeering acts were linked to Plaintiffs' supposed injuries, much less that they were "directly linked" as both the Supreme Court and Third Circuit require.  *See, e.g.*, *Anza*, 547 U.S. at 457; *St. Luke's Health Network, Inc.*, 967 F.3d at 300.

### B.   Plaintiffs Have Not Plausibly Alleged that Defendants Participated in Conducting the Affairs of the Alleged Enterprise

A civil RICO claim under § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, plus an injury to business or property." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)) (internal quotation marks omitted.

"[M]ere association with an enterprise does not violate § 1962(c)." *Sarpolis*, 26 F. Supp. 3d at 427 (citing *Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010)).  In *Reves v. Ernst & Young*, the Supreme "Court concluded that 'to conduct or participate' in the affairs of a RICO enterprise one must, in some capacity, direct the affairs of the enterprise." *Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538 (3d Cir. 1993) (quoting *Reves*, 507 U.S. 170, 179 (1993)).  The Court endorsed the "operation or management test," under which "not even action involving some degree of decision making constitutes participation in the affairs of an enterprise." *Id.* at 1538-39.  To be liable under § 1962(c), Defendants must 1) have had some part in directing the enterprise's affairs," *Reves*, 507 U.S. at 179, and 2) have "conducted or participated in the conduct of the '*enterprise's affairs*,' not just their *own* affairs," *Id.* at 185.

28

In the *University of Maryland at Baltimore*, the plaintiffs were policyholders who brought a class-action suit that included a RICO count against the independent auditor of the defunct insurer's books, alleging that the auditor performed materially deficient, false and misleading financial audits of the insurer and certified its financial statements without a reasonable basis to do so. *See* 996 F.2d at 1537. On appeal, the Third Circuit held that the *Reves* case controlled and affirmed the district court's dismissal of the RICO count. *Id.* at 1538. The Third Circuit held that the plaintiffs failed to state a RICO claim against the auditor, because the plaintiffs failed to allege that the auditor had any part in operating or managing the affairs of the enterprise. *Id.* at 1539-40. The Court explained that "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. . . . In other words, the person must knowingly engage in '*directing* the enterprise's affairs' through a pattern of racketeering activity." *Id.* at 1538 (quoting *Reves*, 507 U.S. at 179); *see also Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (holding that attorney's performance of legal services for the enterprise did not amount to direction and therefore failed to establish conduct of the enterprise's affairs).

Like the auditor in *University of Maryland at Baltimore* and the accounting firm in *Reves*, the Estate Professionals merely provided services (legal services in the case of the Attorney Defendants and Fox, auction services in the case of Antin and Christie's) to the Bankruptcy Estate, the so-called enterprise, in connection with the Shoys Wines.[12] Their provision of those services to the Bankruptcy Estate did not amount to direction of its affairs; Plaintiffs do not even allege that it did. Further, as for Trustee Carroll, the Complaint does not allege that he knowingly engaged in "'*directing* the enterprise's affairs' through a pattern of racketeering activity" because Plaintiffs

---

[12] Nissman also provided legal services to Christie's and Antin.

29

only allege that he filed a criminal complaint – hardly a pattern of directing the alleged enterprise's affairs.

The closest Plaintiffs come to making such an allegation is in their boilerplate recitals setting forth their substantive RICO counts that "[t]he Defendants have conducted, participated, and continue to participate in the affairs of the Enterprise through a pattern of racketeering activity[.]"  Complaint, ¶¶ 149 & 164.  Those recitals are no more than a recitation of the legal standard for liability and are not assumed to be true for purposes of a 12(b)(6) motion.  *See Argueta*, 643 F.3d at 74 (observing that "boilerplate allegations mimicking the purported legal standards for liability" are not assumed to be true).  Because the Complaint fails to allege any facts to support Plaintiffs' allegation that any of the Defendants conducted or participated in the conduct of the so-called enterprise's affairs, the RICO counts must fail.

### C.    Plaintiffs Have Not Plausibly Alleged a Pattern of Racketeering Activity

"It is the 'person' charged with the racketeering offense—not the entire enterprise—who must engage in the 'pattern of racketeering activity.'"  *United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 244 (1989)).  Multiple predicate acts, standing alone, are not sufficient to establish a pattern.  To establish a pattern, two or more predicate acts "must (1) occur within ten years of each other, (2) be 'related,' and (3) 'amount to or pose a threat of continued criminal activity.'"  *In re Atomica Design Grp., Inc.*, 556 B.R. 125, 151 (Bankr. E.D. Pa. 2016) (quoting *Bergrin*, 650 F.3d at 266-67).  Plaintiffs do not plausibly allege sufficient facts to plead relatedness or continuity, and therefore have failed to plead a pattern of racketeering activity.

### i.    Plaintiffs Have Failed to Plausibly Allege Relatedness

"'Relatedness' can be shown through evidence that the criminal activities 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are

interrelated by distinguishing characteristics and are not isolated events.'" *Bergrin*, 650 F.3d at

267 (quoting *H.J. Inc.*, 492 U.S. at 240). Plaintiffs' allegations regarding the so-called "Shoys

Wines Fraud" and "Rogue VIPD Investigation Theory Implementation" do not satisfy the

relatedness requirement, because they essentially allege two separate patterns of supposed

racketeering activity. Neither purported pattern passes muster.

The Complaint alleges that the object of the purported "Shoys Wines Fraud" was to "reject

all of the Shoys Wines, declare the Shoys Wines spoiled, and blame the Prossers for the loss . . .

so Defendants could seek onerous sanctions against the Prossers." Complaint, ¶ 54. To the extent

that Plaintiffs plead facts to support the existence of the so-called Shoys Wine Fraud, however,

they solely concern Christie's (to include Antin). *See* Complaint, ¶ 49(a)-(h). Taken as true for

purposes of this motion, these allegations indicate that Christie's alone, without the involvement

of the other Defendants, decided not to move the Shoys Wines from Estate Shoys by July 18 or

July 20, 2011, due to its own economic interests. Complaint, ¶¶ 49(a)-(h). Plaintiffs allege that

Antin committed bankruptcy embezzlement by unplugging the air conditioning unit at Estate

Shoys on July 29, 2011, after determining that Christie's would not take the Shoys Wines, and

then misrepresented that fact in a false declaration. *See* Complaint, ¶¶ 66(p)-(u); 132(a)[13] & (c).

None of the other Defendants are alleged to have been involved in Christie's decision to

not move the wine from Estate Shoys, nor in the events of July 29, 2011. Their sum total of their

alleged involvement in the so-called Shoys Wines Fraud was the allegedly false statements they

made in the Contempt Motion and related hearings. *See* Complaint, ¶ 132(b), (d). Defendant

---

[13] As discussed in Point III, *supra*, this Court specifically found that Christie's reserved the right to inspect the wine
and that the unplugging of the air conditioner caused no damage to estate property because "the lack of soundness of
the Wines could not have been caused by the air conditioner being unplugged for 15 minutes, that the Wines must
have 'suffered bad storage for a few years.'" Wine Sanctions Opinion at 17-19. Accordingly, Plaintiffs' claims are
precluded by, *inter alia*, collateral estoppel.

31

Nissman, for his part, was not even retained by Christie's until sometime between September 27, 2011 and November 21, 2011—between two and four months after Christie's determined that the wines were spoiled and the Contempt Motion was filed. *See* Complaint, ¶ 103. He was not retained by the Bankruptcy Estate until December 2011. Complaint, ¶ 18. It is not surprising, therefore, that Plaintiffs make no attempt to connect him to the alleged Shoys Wines Fraud. Taken at face value, the allegations regarding the Shoys Wines Fraud suggest that there was essentially no overlap between the alleged participants in the predicate acts, the purpose animating their actions, or any other aspect that would tend to establish relatedness.

More than a month after the events of July 29, 2011, Plaintiff Benta filed a police report, after which, VIPD Office Cuthbert Cyril commenced an investigation into Defendants' allegedly criminal act of unplugging the air conditioning unit at Estate Shoys. Complaint, ¶ 83. These actions were clearly not undertaken at the direction of or with the involvement of Defendants. Plaintiffs allege that Defendants' response to this sham investigation (i.e., the so-called "Rogue VIPD Investigation Theory Implementation") was part of the same pattern of alleged racketeering activity as the so-called Shoys Wines Fraud, but in reality, the only common thread stitching them together was Plaintiffs' own misconduct. Defendants acted in their representational capacities to respond to the abusive and malicious investigation that Plaintiffs ginned up: the various attorneys as counsel to the Bankruptcy Estate, and Carroll as the Trustee. Although Plaintiffs attempt to make it seem like Defendants were engaged in a flurry of nefarious activities in furtherance of this alleged scheme, in fact, the allegations suggest one ongoing episode in which Carroll and the attorney representatives of the Bankruptcy Estate defended the Bankruptcy Estate against the sham investigation. A single episode is insufficient to establish a pattern of racketeering activity. *See Kolar v. Preferred Real Est. Invs.*, 361 Fed. App'x 354, 365 (3d Cir. Jan. 12, 2010) (citing *Efron*

32

*v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000), *cert. denied*, 532 U.S. 905 (2001))

(a "single, finite transaction cannot by itself underpin a pattern of racketeering activity").

There are no factual allegations whatsoever linking Christie's or Antin to the alleged predicate acts undertaken in connection with the "Rogue VIPD Investigation Theory Implementation."  Indeed, a number of the allegations regarding this supposed scheme fail to identify any particular individual who allegedly perpetrated the predicate acts.  *See, e.g.*, Complaint, ¶ 132(g), (i), (j), (k).

### ii.    Plaintiffs Have Failed to Adequately Allege Continuity

The relatedness of predicate acts alone is not sufficient to satisfy the pattern requirement; continuity is also required.  *H.J. Inc.*, 492 U.S. at 240 ("To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity.").  In *H.J. Inc.*, the Supreme Court described continuity as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Id.* at 241 (citing *Barticheck v. Fid. Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir. 1987)).  The Third Circuit has held that predicate acts occurring over the course of one year or less do not satisfy the requisite substantial period of time for RICO continuity purposes.  *See, e.g.*, *Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995) (predicate acts occurring over a few weeks or months without threat of future criminal conduct do not satisfy continuity requirement); *Hughes v. Consol-Pa., Coal Co.*, 945 F.2d 594, 610-11 (3d Cir. 1991) (predicate acts of fraud and threats over twelve months not sufficient); *Sarpolis*, 26 F. Supp. 3d at 429 (listing cases).  "A finding of 'open-ended continuity,' on the other hand, 'depends on whether the *threat* of continuity is demonstrated.'"  *Bergrin*, 650 F.3d at 267 (quoting *H.J. Inc.*, 492 U.S. at 242).

33

The Complaint fails to allege facts that, if taken as true, would be sufficient to establish continuity. Indeed, the allegations of the Complaint make clear that the alleged predicate acts took place, if at all, between July and December 2011. Perhaps realizing that a five-month period falls well short of the minimum threshold for close-ended continuity in this Circuit, Plaintiffs have attempted to muddy the waters by injecting incomprehensible assertions regarding allegedly preexisting RICO enterprises not involving Defendants that predate the events of July through December 2011, and by sprinkling references to those supposed other enterprises throughout the Complaint. *See* Complaint, pgs. 1-6 & ¶¶ 117, 130, 132(g). These opaque references have nothing to do with Defendants or the events at issue in this proceeding and are irrelevant to any element of Plaintiffs' claims against Defendants. Indeed, the Complaint expressly limits its reach to one "enterprise" and a single asset – the Shoys Wines. Complaint, pg. 3. Rather than waste the Court's time on attempts to decipher them, Defendants simply note that Plaintiffs' previous attempts to assert claims against the parties allegedly involved in those purported enterprises were dismissed, and Plaintiffs are subject to an antisuit injunction that prevents them from suing these parties again.[14]

Plaintiffs also reference actions taken after December 2011 by various courts, other administrative bodies, and individuals not alleged to have been part of the purported enterprise. *See* Complaint, ¶¶ 120-131, 137-144. Presumably, this is another attempt to elongate the timeframe to create the appearance of closed-ended continuity, or it may be an effort to suggest the possibility of open-ended continuity. In any event, Plaintiffs' efforts in this regard are unavailing, because the Complaint contains no factual allegations that Defendants engaged in any alleged racketeering activities outside of a five-month period in 2011. The Third Circuit has made

---

[14] *See* n. 1, *supra*.

clear that events transpiring over less than a year cannot establish closed-ended continuity without the threat of future criminal conduct.  Beyond utterly unsupported assertions that a threat of future criminal conduct exists in this case, there is no basis for finding that Plaintiffs have plausibly alleged either closed-ended or open-ended continuity.  Accordingly, Plaintiffs have failed to plead a pattern of racketeering activity for purposes of RICO.

### D.    Plaintiffs Have Not Plausibly Alleged a RICO Conspiracy

To plead a civil RICO conspiracy under § 1962(d), a plaintiff must adequately allege that a defendant conspired to engage in a substantive RICO offense in violation of § 1962(a), (b), or (c).  18 U.S.C. § 1962(d).  "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) (citing *Leonard v. Shearson Lehman/Amer. Express, Inc.*, 687 F. Supp. 177, 182 (E.D. Pa. 1988)); *see also Kolar*, 361 Fed. App'x at 366 n.13 ("If the substantive RICO claims fail on the merits, as they do here, *Lightning Lube* controls.").

The Complaint's Second Cause of Action asserts that Defendants conspired and acted with a common purpose to accomplish the Shoys Wines Fraud and Rogue VIPD Investigation Theory Implementation through a pattern of racketeering acts in violation of § 1962(c).  Complaint, ¶ 154.  Although Plaintiffs assert that each Defendant committed one or more "overt racketeering act" to advance the ends of the Shoys Wines Fraud and the Rogue VIPD Investigation Theory Implementation, Complaint, ¶ 155, as discussed in the preceding sections, Plaintiffs have not alleged facts sufficient to support that assertion.  Just as the substantive RICO count fails due to lack of well-pleaded facts, so too must the RICO conspiracy count.  *See Lightning Lube, Inc.*, 4 F.3d at 1191.

35

Paragraph 108 contains a threadbare allegation that "[o]n information and belief, before December 5, 2011 Nissman, acting as Christie's counsel, and the Court-Appointed 7 Professionals had a plan, a product of a further conspiracy, to obstruct the VIPD Shoys Wines Criminal Investigation to facilitate the Shoys Wines Fraud."  This is a bald assertion unsupported by any alleged facts that would suggest the existence of an agreement, much less any of the pertinent details Plaintiffs would need to plead regarding any such agreement.  Plaintiffs appear to have selected the December 5, 2011 date because that was when the Protective Order Motion was filed. *See* Complaint, ¶ 110.  Thus, Plaintiffs are essentially alleging that by agreeing to represent the Bankruptcy Estate, Nissman had entered into a RICO conspiracy.  In addition to being absurd, this allegation is unsupported by any facts alleged in the Complaint.

Plaintiffs' further allege that all of the acts listed in paragraph 116 of the Complaint, which Plaintiffs claim constitute the so-called "Rogue VIPD Investigation Theory Implementation," were the product of a RICO conspiracy among the Defendants to implement the Shoys Wines Fraud by suppressing and obstructing the VIPD Shoys Wines Criminal Investigation.  Yet, none of these allegations support a claim that Defendants engaged in any illegal act, nor that they agreed to engage in any illegal act.  Indeed, with the exception of Defendant Nissman's completely appropriate (and completely mischaracterized) alleged comment to Benta regarding the sham VIPD Shoys Wines Criminal Investigation referenced in paragraph 116(b), none of the factual allegations in paragraph 116 involve or even mention Defendants.[15]  Thus, Plaintiffs' assertions in

---

[15] Plaintiffs' contention that Nissman should somehow be held liable because he allegedly "suggested Pl Benta act to cause the termination of the VIPD Shoys Wines Criminal Investigation" is absurd on its face. *See* Complaint ¶ 116(b). Benta was not a part of the investigation and thus had no authority to terminate it.  Complaint ¶83.  The balance of ¶116 concerns Benta's suspension from the Police Department, which had nothing to do with Defendants. *See* Complaint ¶ 116(d) (stating that "the Virgin Islands Police Department, Office of the Commissioner, Government of the Virgin Islands of the United States, under the signature of Henry W. White, Jr. Acting Police Commissioner, issued a correspondence to Pl Benta … indicating that a recommendation for Pl Benta's termination has been submitted to the Governor's office …"); Complaint ¶ 116(e) (stating that White issued a 'Directive' notifying Benta that he was

paragraph 116 fail to offer any factual support for Plaintiffs' substantive or conspiracy RICO claims.

## V.      PLAINTIFFS FAIL TO ADEQUATELY PLEAD CICO CLAIMS

"In order to state a claim under CICO, Plaintiff[s] must identify:  (1) a 'person'; (2) an 'enterprise'; and (3) demonstrate that the person conducted or participated in the affairs of the enterprise through a 'pattern of criminal activity.'"  *Govt. of U.S. Virgin Islands v. Takata Corp.*, 67 V.I. 316, 368, 2017 WL 3390594, at *19 (V.I. Super. June 19, 2017) (quoting 14 V.I.C. § 605(a)).  The Virgin Islands' CICO Act "'is cast in the mold of the federal RICO statute,' and Virgins Islands courts apply RICO analysis to CICO claims."  *Charleswell*, 308 F. Supp. 2d at 577, 45 V.I. at 513 (citing *Pemberton Sales & Servs., Inc. v. Banco Popular de P.R.*, 877 F. Supp. 961, 970 (D.V.I. 1994)); *see also Takata Corp.*, 67 V.I. at 369, 2017 WL 3390594, at *20 ("Considering the similarities between the statutory provisions, the Court agrees that federal case law interpreting RICO is persuasive with respect to the CICO provisions outlining violations under the Act[.]").[16]   Thus, federal case law interpreting RICO applies to CICO claims to the extent that the statutory language is the same.

---

immediately placed on administrative leave without pay); Complaint ¶ 116(f) (stating that Benta was suspended without pay as a consequence of the Directive).

[16] The notable exception to this is when the RICO and CICO statutes define a key element of the claim differently, as they do regarding a "pattern of racketeering activity" under RICO and a "pattern of criminal activity" under CICO. *Compare* 18 U.S.C. § 1961(5) *with* 14 V.I.C. § 604(j).  Given the greater specificity with which CICO defines a "pattern of criminal activity," two Virgin Islands trial courts have concluded that federal case law interpreting "pattern of racketeering activity" under RICO is inapplicable to CICO because CICO contains no continuity requirement. *See Takata Corp.*, 67 V.I. at 377, 2017 WL 3390594, at *25; *People v. McKenzie*, 66 V.I. 3, 19-20, 2017 WL455737, at *8 (V.I. Super. Jan. 30, 2017).  The Virgin Islands Supreme Court has yet to opine on this issue.  In any event, because the difference between the respective definitions is limited to the "pattern" sub-element of continuity, only federal case law predicated on that particular sub-element would seem to be inapplicable based on the logic of both *Takata Corp.* and *McKenzie*.

A.      **Plaintiff's Substantive CICO Claims Fail for Lack of Statutory Standing**

Plaintiffs likewise lack standing to bring a CICO claim under section 605(a) of the Virgin Islands Code against Defendants.  14 V.I.C. § 605(a).  Section 607(c) provides that "any person, directly or indirectly, injured by conduct constituting a violation . . . of section 605 shall have a cause of action[.]"  14 V.I.C. § 607(c).  Although CICO standing is more permissive than RICO standing in that it permits suits by any person injured "directly or indirectly" by a CICO violation, there must still be a plausible allegation of injury.  *See Charleswell*, 308 F. Supp. 2d at 577, 45 V.I. at 534-35 (plaintiff must allege injury from conduct constituting a CICO violation to state a claim).  Although Plaintiffs have included naked assertions that they sustained injuries due to Defendants' alleged CICO violations, the Complaint is devoid of any factual support for those assertions.  Accordingly, their claim under section 605(a) fails.  *See Gardiner v. St. Croix Dist. Governing Bd. of Dirs.*, SX-12-CV-084, 2019 WL 3814427, at *7 (V.I. Super. July 30, 2019) (holding conclusory statements unsupported by factual allegations insufficient to state CICO claim).

B.      **Plaintiffs Have Not Plausibly Alleged that Defendants Participated in Conducting the Affairs of the Alleged CICO Enterprise**

As with their RICO claim, Plaintiffs must allege that Defendants participated in conducting the affairs of the alleged enterprise to maintain their CICO claim.  The same standards that controlled the analysis of this issue for purposes of the RICO count apply to CICO.  *See Virgin Islands v. Adams*, 2010 WL 7371482, at *4 (V.I. Super. Nov. 12, 2010) (citing *Reves*, 507 U.S. at 185).  For the same reasons set forth in the RICO analysis, Plaintiffs have failed to plausibly allege that Defendants participated in conducting the affairs of the CICO enterprise.  Therefore, Plaintiffs have failed to assert a CICO claim under section 605(a).

38

### C.      Plaintiffs Have Not Plausibly Alleged a CICO Conspiracy

Conspiracy to commit a substantive CICO offense is prohibited under section 605(d) of the Virgin Islands Code.  14 V.I.C. § 605(d).  Section 605(d) provides that "[i]t is unlawful for any person to conspire or attempt to violate, either directly or through another or others, the provisions of section 605(a), (b), or (c).  § 605(d).  Plaintiffs allege that "[e]ach of the Defendants were conspirators with respect to the Shoys Wines Fraud or became conspirators with respect to the Shoys Wines Fraud which fraud succeeded by reason of their conspiracy related to the Rogue VIPD Investigation Theory Implementation."  Complaint, ¶ 132(l).  As noted in the discussion of their ill-fated RICO conspiracy claim, Plaintiffs have failed to allege facts to support their CICO conspiracy count and instead rely on labels and legal conclusions.  By neglecting to plead supportive facts, Plaintiffs have failed to plausibly allege that Defendants engaged in a CICO conspiracy.  *See Gardiner*, 2019 WL 3814427, at *7 (holding that plaintiff failed to state a CICO claim because the allegations in the complaint consisted only of conclusory statements).

### VI.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1985

As a threshold matter, this Court should dismiss the fifth cause of action because Benta, as a Virgin Islands police officer, does not have standing.  This Court also has grounds to dismiss both the fifth and sixth causes of action against the Attorney Defendants on the grounds that Section 1985 claims are barred against such defendants.  Finally, the Court should dismiss the fifth and sixth causes of action as to all Defendants because the Complaint fails to assert any facts even remotely supporting claims that Defendants either prevented Benta from performing his duties or in any way obstructed justice.

127609083.2

## A.      Plaintiffs' Claims Under Section 1985(1) Fail Because Benta Was Not A United States Officer

Plaintiffs' fifth and sixth causes of action, to the extent they are premised on a violation of Section 1985(1), fail as a matter of law and must be dismissed.  In order to pursue a claim under Section 1985(1), the plaintiff must be a federal officer.  As set forth in paragraph 69 of the Complaint, Benta was a "Virgin Islands Police Officer." Complaint, ¶ 69.  There are no allegations in the Complaint describing any of the Plaintiffs as officers of the United States.  *See, e.g.*, *Rossy v. Puerto Rico Police Dep't*, 2009 WL 1140174, at *4 (D.P.R. Apr. 24, 2009) ("[C]ourts have held that non-federal officers, including judges, police officers, and county health board members, are not "federal officers" for the purposes of Section 1985(1)."); *see also Ramos v. Main*, 2021 WL 4311427, at *8 (D.N.J. Sept. 22, 2021) ("Section 1985(1) prohibits "two or more persons" from interfering with a federal officer's performance of his duties, 42 U.S.C. § 1985(1), and Plaintiff is not a federal officer.").  Indeed, it seems impossible for Plaintiffs to assert that Defendants conspired to "prevent an officer from performing his official duties" when the Complaint (and its Exhibit 2) make clear that: (i) Benta simply "reported" (as a citizen, not as an investigating officer) the July 29th Events to the police; (ii) the police determined Benta's "report" was a civil matter; and (iii) Benta was not the one investigating the alleged incident.  Further, the Prossers are not officers performing any official duty and, therefore, cannot assert a §1985(1) claim.

Because the Complaint does not plead facts demonstrating that any of the Plaintiffs are federal officers, Plaintiffs' claims under Section 1985(1) must be dismissed.  *Dunning v. Varnau*, No. 1:14-CV-932, 2015 WL 5729332, at *7 (S.D. Ohio Sept. 30, 2015) ("The overwhelming weight of authority holds that Section 1985(1) is not applicable when the plaintiff is not a federal officer") (citations omitted).

40

## B.    Plaintiffs' Claims Under 42 U.S.C. 1985(2) Fail As Asserted Against The Attorney Defendants

Plaintiffs' fifth and sixth causes of action, to the extent they are premised on a violation of Section 1985, fail as a matter of law against Defendants Geron, Nissman and Stassen ("**Attorney Defendants**") and must be dismissed.

It is settled law that a Section 1985 claim cannot proceed against attorneys acting within the scope of their representation, as rendered by the attorney-client exception to Section 1985. *See, e.g.*, *D&d Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 2015 WL 8582984, at *15 (D.N.J. Dec. 10, 2015) ("That alleged conduct on the part of Epstein and the Board Superintendent, however, fell squarely within the attorney-client exception to Section 1985(2), which exempts 'attorneys acting within the scope of the attorney-client relationship' from Section 1985 liability.'"); *see also Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 n.4 (3d Cir. 2012) ("Mierzwa's complaint also cited 42 U.S.C. § 1985 as a basis for his claims against the attorney defendants and their clients. Liberally construed, the complaint appears to allege that these defendants conspired to obstruct justice in the state court action, in violation of the second clause of § 1985(2), by filing frivolous court papers. Although the District Court did not explicitly address this claim, it is easily dismissed as meritless."); *Heffernan v. Hunter*, 189 F.3d 405, 411 (3d Cir. 1999) ("No conspiracy can exist where an attorney's advice or advocacy is for the benefit of his client rather than for the attorney's 'sole personal benefit.'"); *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003) ("[A]s long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy.").

In *Doherty v. American Motors Corp.*, 728 F.2d 334 (6th Cir. 1984), the plaintiff alleged a conspiracy under Section 1985(2) between a corporation and its inside, as well as its outside, counsel. Citing the general rule that a corporation cannot conspire with its agents, the Sixth Circuit

41

Court of Appeals found that no conspiracy existed, remarking, "it is clear from the record that the actions of [the corporation's] attorneys were motivated not by personal concerns but by concerns for their clients." *Id.* at 339–40.

Similarly here, the Complaint fails to cite any facts establishing that Attorney Defendants were acting outside the scope of the attorney-client relationship or motivated by "personal concerns." *Id.* Even taking Plaintiffs' outlandish theory—that "Defendants decided to reject all of the Shoys Wines, declare the Shoys Wines spoiled and blame the Prossers for the loss," and that Defendants sought to "obstruct the VIPD Shoys Wines Criminal Investigation to facilitate the Shoys Wine Fraud"—to be true, such claims do not support a finding that the Attorney Defendants were acting personally, rather than within the scope of the attorney-client relationship. Complaint, ¶¶ 54, 108. Plaintiffs' allegations against the Attorney Defendants clearly complain about actions taken by the attorneys in the course of representing the Trustee and his court-approved professionals, and they were conducted in their positions as officers of the Court. With regard to Defendant Geron, Plaintiffs make only specific factual allegations that while representing the Trustee he made certain representations to the Court at a single Omnibus Hearing. *See* Complaint ¶84-85. The limited specific factual allegations against Defendants Stassen and Nissman are similarly related to alleged conduct taken while representing their clients – the Trustee and his professionals – and/or while appearing before the Court. Complaint, ¶¶78, 90, 108. Indeed, Plaintiffs do not allege that any of Defendants' actions were taken outside the scope of their professional role as agents of the Trustee.

This Court and the District Court have already determined that Attorney Defendants, along with the rest of the Defendants, have acted within the scope of their duties with respect to the circumstances alleged in the Complaint. *Benta et al. v. Christie's, Inc. et al.*, Civil No. 2013-0080,

DE 55 at 17. Therefore, Plaintiffs' claims against Attorney Defendants premised on a violation of Section 1985 must be dismissed.

### C. Plaintiffs' Claims Under Sections 1985(1) And (2) Fail To State A Claim Against All Parties

Finally, even if the fifth and sixth causes of action could survive Plaintiffs' lack of standing and the Attorney Defendants' immunity from such claims, the claims should still be dismissed as they fail to provide even the barest facts demonstrating any wrongdoing on the part of Defendants. Under Third Circuit law, in order to state a claim under Section 1985(2), a plaintiff "must set forth facts from which a conspiratorial agreement between the defendants can be inferred." *Parrott v. Abramsen*, 200 F. App'x 163, 165 (3d Cir. 2006); *see also Muhammad v. Cappellini*, 477 F. App'x. 935, 938 (3d Cir. 2012) (dismissing plaintiff's conspiracy claim under § 1985 because the plaintiff failed to allege enough facts to demonstrate that the defendants, including the attorney defendant, communicated with one another, or otherwise came to an agreement to conspire against him). Specific facts are required. *Id.*

Here, the fifth and sixth causes of action set forth nothing more than the completely conclusory allegation that "The actions of defendants Geron, Stassen, Nissman, Christie's, and Antin individually, and in conspiracy with each other and/or other unnamed co-conspirators as aforesaid, were undertaken for the purpose of deterring Oakland Benta through intimidation, from testifying freely as a witness in an ongoing court proceeding on behalf of both and Mrs. Prosser." *See* Complaint, ¶¶ 178, 183. These allegations do not approach the level of pleading needed to "nudge [Plaintiffs'] conspiracy claim across the line from 'conceivable' to 'plausible.'" *Shulman v. Zsak*, 485 F. App'x 528, 531 (3d Cir. 2012) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (2007)).

43

Plaintiffs' claims under Section 1985(1) fail because their Complaint lacks "enough facts from which a court could plausibly infer a conspiracy" to have Benta terminated. *Shulman*, 485 F. App'x at 531. In *Shulman*, the plaintiff alleged that defendant 1 called defendant 2 and told him to "frame" plaintiff and then defendant 2 called defendants 3, 4 and 5 to "carry out the plot." *Id.* Even these allegations, which contain far more detail than those in the instant Complaint, were too "speculative" to form the basis of a claim. *Id.* In addition, there are no facts that show an "*agreement* among the defendants to carry out these actions, and 'the linchpin for conspiracy is agreement.'" *Id.* (*quoting Bailey v. Bd. of Cnty. Comm'rs,* 956 F.2d 1112, 1122 (11th Cir. 1992)) (emphasis in original). Though the Complaint generally alleges that "a recommendation for Pl Benta's termination" had been submitted to the Governor's office, there are no allegations that Defendants, let alone Defendants acting in concert, made such recommendation or in any way caused his termination. Complaint, ¶ 116(d). The Complaint's lack of allegations as to a conspiracy or agreement among the Defendants is fatal to its ability to survive a motion to dismiss on the Section 1985(1) claim.

Similarly, Plaintiffs' claims under Section 1985(2) fail to adequately plead a conspiracy. The Complaint lacks any facts demonstrating how Defendants allegedly intimidated Benta or tried to prevent him from testifying on behalf of the Prossers. Plaintiffs have done nothing more than simply restate the language of the statute, which is insufficient to state a claim and is grounds for dismissal. *See Voth v. Hoffman*, 2016 WL 7535374, at *10 (D.N.J. Apr. 28, 2016) (dismissing §1985(2) claim where plaintiff simply "parrot[ed] the statutory language" and alleged that defendants prevented him from "testifying freely, fully and truthfully"). Moreover, a claim under § 1985(2) requires the plaintiff to plead that racial or otherwise class-based, invidiously

44

discriminatory intent existed at the time of the conspiracy. *Davis v. Twp. of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999). Here, there are no such allegations, nor could there be.

Plaintiffs' scant and conclusory allegation offers nothing from which this Court can infer a "conspiratorial agreement" between the Defendants or that Defendants took any action to prevent Benta from testifying at any time. In fact, Benta sat for a deposition, provided an affidavit and filed a police report relating to this matter. These are not the actions taken by an intimidated witness.

## VII.    PLAINTIFFS FAILS TO STATE A CLAIM FOR DEFAMATION

Plaintiffs' fifth and sixth causes of action purport to assert claims for "defamation" based on introductory headers, but the Complaint is devoid of sufficient allegations supporting any such claims. A claim for defamation is subject to a more stringent standard of pleading under Fed. R. Civ. P. 8. *Manns v. Leather Shop Inc.*, 960 F.Supp. 925, 928-29 (D.V.I. 1997) (*citing* 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: § 1245 (Civ.2d 1990)). "A complaint of defamation must, on its face, specifically identify what allegedly defamatory statements were made by whom and to whom." *Manns*, 960 F. Supp. at 928–29.

To state a claim for defamation, Plaintiffs must allege that: (1) defendants made a false and defamatory statement about them; (2) the defendants made an unprivileged publication of the statement to a third party; (3) the defendants made the communication either intentionally or negligently; and (4) the publication caused the plaintiffs special harm. *Poleon v. Gov't of Virgin Islands*, 2018 WL 3764086, at *15 (D.V.I. Aug. 8, 2018) (citations omitted). A statement is defamatory if it tends to harm a plaintiff's reputation "as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* (*quoting Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 89 (3d Cir. 2013)) (*quoting* Restatement (2d) Torts § 559).

45

Defendants cannot identify any allegations in the Complaint to support their defamation claims, which is the very definition of failing to state a claim.   The lack of specific facts regarding alleged defamatory statements made by Defendants gives this Court grounds to dismiss the claim. *See, e.g.*, *Weeks v. Leeward Islands Apothecaries*, 2011 WL 612734, at *2 (D.V.I. Feb. 11, 2011) (dismissing defamation claim where "the amended complaint does not allege sufficient facts to support a viable claim for defamation against any of the defendants. It does not allege what defamatory statements were made, by whom, and when they were made.").

However, even assuming, *arguendo*, that Plaintiffs have identified a statement as allegedly defamatory, this Court should determine that any such statement is not actionable under Virgin Islands law. For example, Plaintiffs contend that Geron's statement that "Chief Benta…is on Prosser's payroll" (Complaint, ¶ 85) even if false, is not defamatory as Plaintiffs have failed to allege how such statement would "lower" any third person's view of Benta or deter such persons from associating with him.

The Court has further grounds to dismiss the defamation claim, given the context in which the alleged statement was made.   Defendants, as attorneys or parties to the legal proceedings described in the Complaint, have absolute privilege to publish "defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding."   In *Dorval v. Sapphire Vill. Condo. Owners Ass'n*, 838 F. App'x 8, 12 (3d Cir. 2020), the Third Circuit specifically invoked the absolute privilege held by private litigants in upholding a lower court dismissal of a defamation claim on the grounds that the statement in question was made by a witness in her capacity as a party's counsel.   The Virgin Islands, "through its recognition of the Restatements as its rules of decision," embraces this

46

absolute privilege for statements made by an attorney at law during a judicial proceeding. *See Sprauve v. CBI Acquisitions, LLC*, 2010 WL 3463308, at *11 (D.V.I. Sept. 2, 2010) (holding that there is an absolute privilege that protects statements made to law enforcement in order to initiate a criminal investigation from any claim of defamation due to the Virgin Island's acceptance of the Restatements as its rules of decisions).[17]

The privilege also extends beyond the courtroom. Comment a to the Restatement provides that "[t]he publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding." RESTATEMENT (SECOND) OF TORTS § 586, cmt. a. The privilege "extends to conversations in judges' chambers, to statements in depositions and during deposition breaks, to statements in settlement conferences and negotiations, to statements in letters to judges, to communications with court-appointed trustees and receivers, and to statements in motions to withdraw." *The Lawyer's Litigation Privilege*, Am. J. of Trial Advocacy, Fall 2007, at 281, 310–11 (citing *Gibson v. Mut. Life Ins. Co. of N.Y.*, 465 S.E.2d 56, 60 (N.C. Ct. App. 1996) (finding that statements in a deposition and during a break were privileged)). In addition, "the fact that the defamatory publication is an unwarranted inference from the evidence is not enough to deprive the attorney of his privilege." RESTATEMENT (SECOND) OF TORTS § 586, cmt. c. Under that reasoning, Geron's statement cannot form the basis of a defamation claim under Virgin Islands law on the basis of such privilege.

---

[17] The Second Restatement of Torts provides: "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." RESTATEMENT (SECOND) OF TORTS § 586.

47

The defamation claim also fails because the Complaint is completely devoid of any "special harm" that Plaintiffs suffered by virtue of the supposed (and unidentified) defamatory statements. Special harm occurs when "defamation [is] a necessary antecedent of the harm, which would not have occurred without it."  Restatement (2d) of Torts § 622A, Comment b. The Complaints fails to assert any facts which demonstrate that any statements made by any Defendant were the "necessary antecedent" of Benta's alleged loss of employment and opportunities or alleged pain and suffering. *Id.* Finally, the defamation claim fails because it appears to be based on an alleged "conspiracy" between defendants Geron, Stassen, Nissman, Christie's and Antin.  Complaint, ¶ 179.  Because "Plaintiff hinges the defamation claim upon a conspiracy charge" and conspiracy is not adequately pled,  "the defamation claim must also fail." *Espinosa v. Redfield*, 69 V.I. 349, 354 (V.I. Super. Ct. 2018).

## VIII.   PLAINTIFFS FAIL TO STATE A FIRST AMENDMENT CLAIM

The headings of Counts five and six of the Complaint include the words "First Amendment" although it is woefully unclear from the averments on what basis Plaintiffs have alleged a claim under the First Amendment.  Defendants infer that Plaintiffs perhaps have attempted to allege a claim of denial of meaningful access to the courts.  *See Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002).  However, "[t]he backward-looking First Amendment denial-of-access-to-courts claim[] identified by the Supreme Court involve[s] situations in which "official acts" cause[] the denial of access to the courts." *Beckerman v. Weber*, 317 F. App'x. 125, 127 (3d Cir. 2008) (holding that a lawyer's conduct, which perhaps amounted to legal malpractice, did not qualify as an official act).  When an official act is lacking, it would be futile to allow a plaintiff to amend his complaint because it is a legal inadequacy that amending cannot cure. *Beckerman*, 317 F. App'x. at 127.

48

Here, Plaintiffs have failed to allege an official act by Defendants. Plaintiffs have not asserted that Defendants' alleged actions were taken under color of law. As such, Plaintiffs fail to state a First Amendment claim against Defendants and the Complaint should be dismissed.

Further, assuming *arguendo* that Defendants' alleged acts were "official acts" taken under color of law, which allegedly caused Plaintiffs to forego certain legal remedies, Plaintiffs have still not stated a plausible claim. In this case, Plaintiffs have not alleged how they were intimidated or hindered in their own efforts to pursue a legal claim or to testify in court. Plaintiffs have alleged no actual First Amendment harm and, thus, to the extent Counts five and six are attempting to state a First Amendment claim, they should be dismissed with prejudice.

## IX.    CONCLUSION

For all the forgoing reasons, the Court should dismiss the Complaint with prejudice and order any other relief the Court determines is appropriate.

Dated: November 2, 2021

Respectfully submitted,

/s/ Elizabeth C. Viele
**FOX ROTHSCHILD LLP**
Elizabeth C. Viele (admitted *pro hac vice*)
101 Park Avenue, Suite 1700
New York, NY 10178

and

/s/ Scot McChain
**MCCHAIN HAMM & ASSOCIATES, LLC**
Scot McChain
5030 Anchor Way, Ste. 13
Christiansted, VI 00820
*Attorneys for James P. Carroll, Fox Rothschild LLP, Yann Geron, and William H. Stassen*

49

127609083.2

/s/ Rachel E. Hudgins
**HUNTON ANDREWS KURTH LLP**
Rachel E. Hudgins (Bar No. R2075)
Joseph Patella
200 Park Avenue, 52nd Floor
New York, NY 10166
*Attorneys for Christie's, Inc., Charles Antin
and David M. Nissman*