**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISION**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| In re:                                    ) | Ch. 7 |
|                                           ) | |
| JEFFREY J. PROSSER,                        ) | Case No. 3:06-bk-30009 |
|                                           ) | |
|                                           ) | |
|                  Debtor.                   ) | |
| _____ ) | |
| OAKLAND BENTA, JEFFREY J. PROSSER, ) | |
| AND DAWN E. PROSSER,                       ) | Adv. Pro. No. |
|                                           ) | 3:21-ap-03001 MFW |
|                  Plaintiffs,               ) | |
|                                           ) | Re:  D.I. 1, 23, 35 & 37 |
|                                           ) | |
| v.                                        ) | |
|                                           ) | |
| CHRISTIE'S INC., CHARLES ANTIN,           ) | |
| FOX ROTHSCHILD LLP, YANN GERON,           ) | |
| WILLIAM H. STASSEN, DAVID M.              ) | |
| NISSMAN, JAMES P. CARROLL,                ) | |
|                                           ) | |
|                  Defendants.               ) | |
|                                           ) | |

**MEMORANDUM OPINION**[1]

This adversary proceeding is the latest attempt to
relitigate issues in this litigious bankruptcy case which has
already spawned numerous opinions and orders of the Bankruptcy
and District Courts.  Before the Court is a motion to dismiss
(the "Motion to Dismiss") a Complaint filed by the debtor Jeffrey
Prosser ("Prosser"), his wife Dawn Prosser ("Dawn Prosser"), and

---

[1]   The Court is not required to state findings of fact or
conclusions of law pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure.  Instead, the facts recited are those
averred in the Complaint, which must be accepted as true for the
purposes of this Motion to Dismiss.  Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009).

Oakland Benta ("Benta")[2] (collectively "the Plaintiffs") against

Christie's, Inc. ("Christie's"), Christie's employee Charles

Antin ("Antin"), and Christie's attorney David M. Nissman

("Nissman"), as well as the chapter 7 trustee James Carroll ("the

Chapter 7 Trustee"), and his counsel Yann Geron ("Geron"),

William H. Stassen ("Stassen"), and Fox Rothschild LLP ("Fox")

(collectively, the "Defendants").  The Complaint seeks damages

for violations of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"),[3] and the Virgin Islands Criminally

Influenced and Corrupt Organizations Act ("CICO"),[4] and other

statutes.  For the reasons stated below, the Court will grant the

Defendants' Motion to Dismiss and dismiss the Complaint with

prejudice.


I.   BACKGROUND

     Prosser and two businesses he owned and controlled —

Innovative Communications Company, LLC ("Old ICC") and Emerging

Communications, Inc. ("ECI") — filed petitions under chapter 11

of the Bankruptcy Code in July 2006 in the District of the Virgin

---

[2]    Benta was head of security for the Prosser companies and
family, as well as Training Director at the Virgin Islands Police
Department ("VIPD") and District Police Chief of St. Croix.

[3]    18 U.S.C. § 1962.

[4]    14 V.I.C. §§ 600 & 605.

Islands.[5]  The following year, a third business owned by Prosser,

Innovative Communications Corporation ("New ICC"), filed a

chapter 11 petition.[6]  Prosser's individual chapter 11 case was

converted to a chapter 7 proceeding on October 3, 2007, and the

Chapter 7 Trustee was appointed to handle Prosser's individual

estate.[7]  On March 15, 2007,  Stan Springel ("the Chapter 11

Trustee") was appointed trustee for the corporate debtors.[8]

In December 2007, the Chapter 7 and 11 Trustees filed an

adversary proceeding against Prosser, Dawn Prosser, and other

Prosser family members asserting that they possessed property and

monies belonging to the various bankruptcy estates.[9]  Among the

property claimed to be part of the estates was a wine collection.

The Bankruptcy Court issued a preliminary injunction directing

Prosser and his family members to secure and preserve the wine

collection and other disputed property in their possession until

---

[5]    Case Nos. 3:06-bk-30007; 3:06-bk-30008; 3:06-bk-30009.

[6]    Case No. 3:07-bk-30012.

[7]    Adv. D.I. 1, at 6.  References to the docket in the instant
adversary proceeding are to "Adv. D.I. #," while references to
the dockets in the main bankruptcy cases, other adversary
proceedings, and the District Court Cases are to "Case No. #,
D.I. #."

[8]    Case No. 3:07-bk-30012, D.I. 122.

[9]    Case No. 3:07-bk-30012, D.I. 169; Case No. 3:2007-ap-03010,
D.I. 1.

the merits of the proceeding were decided.[10]   On February 9,
2011, the Bankruptcy Court entered an order (the "Turnover
Order") requiring that the Prossers turn over their wine
collection to the Chapter 7 Trustee.[11]   The Chapter 7 Trustee
retained Christie's to package and move the wine collection from
the Prossers' residence in Estate Shoys in preparation for its
sale.[12]

On July 29, 2011, Christie's employees arrived at the
Prossers' residence to inspect, collect, and transport the
wines.[13]   Benta was present when the Christie's employees
arrived.[14]   After inspecting the wine, Christie's agents
determined that it was ruined from being stored at high
temperatures and refused to accept it.[15]   After the Christie's
representatives left the property, Benta inspected the wine
storage area, noticed that the window air conditioner was

---

[10]   Case No. 3:2007-ap-03010, D.I. 79.

[11]   Adv. D.I. 1 ¶ 36; Springel v. Prosser (In re Prosser), Adv.
No. 07-3010, 2011 WL 576068, at *53 (Bankr. D.V.I. Feb. 9, 2011)
(Turnover Opinion), subsequently aff'd, No. 06-30009, 2013 WL
996367 (D.V.I. Mar. 14, 2013), aff'd, 574 F. App'x 82 (3d Cir.
2014).

[12]   Case No. 3:06-bk-30009, D.I. 1454.

[13]   Adv. D.I. 1 ¶¶ 66-68.

[14]   Id.

[15]   Adv. D.I. 1 ¶ 66.

unplugged, and plugged it back in.[16]

On August 4, 2011, the Chapter 7 Trustee filed a Motion to Enforce Turnover, for Contempt, and for Sanctions in the Bankruptcy Court asserting that the Shoys Wines were ruined (the "Trustee's Contempt Motion").[17]  Shortly thereafter, Prosser filed a motion requesting an evidentiary hearing.[18]

In the interim, on September 3, 2011, Benta filed a criminal report with the VIPD on behalf of the Prossers regarding the incident.[19]  An investigation was commenced and subpoenas issued to Christie's employees and the Chapter 7 Trustee.[20]  In December 2011, the VIPD Acting Police Commissioner informed Benta that a recommendation for his termination had been submitted to the Governor's Office because of his actions relating to the investigation of the wine incident and Benta was subsequently suspended without pay by the VIPD.[21]

---

[16]   Id. ¶ 123.

[17]   Id. ¶ 70.  The actions of the Defendants regarding the Shoys wine are referred to as the Shoy Wine Fraud in the Complaint. Id. at iii.

[18]   Id. ¶¶ 81-82.

[19]   Id. ¶ 83 & Ex. 2.

[20]   Id. ¶¶ 83, 92, 102.

[21]   Id. ¶ 116.  The actions of the Defendants in obstructing the VIPD criminal investigation of the Shoy Wine Fraud and Benta's suspension are referred to as the Rogue VIPD Investigation in the Complaint.  Id. at iii.

After an evidentiary hearing on the Trustee's Contempt
Motion, the Bankruptcy Court issued an Opinion and Order on
September 18, 2012, holding the Prossers in contempt for
violating its Order to preserve the wine collection.[22]  In its
Opinion, the Bankruptcy Court concluded that the wines were
spoiled and that, although the air conditioner may have been
unplugged fifteen minutes prior to Christie's arrival, the wines
had been spoiled due to the Prossers' prior actions.[23]  The Court
assessed sanctions against the Prossers totaling approximately $1
million based on violations of at least three court orders.[24]
The Plaintiffs appealed the Wine Sanctions Opinion, which was
ultimately affirmed on February 23, 2017.[25]

In the interim, on July 29, 2013, the Plaintiffs filed a
complaint in the District Court (the "District Court Complaint")
against Defendants Christie's, Antin, Nissman, Geron, Stassen,

---

[22]    Springel v. Prosser (In re Prosser), Adv. No. 07-03010 JKF,
2012 WL 4442734 (Bankr. D.V.I. Sept. 18, 2012) (the "Wine
Sanctions Opinion").

[23]    Id. at 19 n.24, 23-25.  See also Adv. D.I. 1 ¶ 120(b).  All
of the Shoys wines were subsequently sold under Bankruptcy Court
supervision by the Chapter 7 Trustee at a price well below the
value listed on the Trustee's initial wine inventory.  Adv. D.I.
1 ¶¶ 40, 42, 43-49.

[24]    Springel v. Prosser, 2012 WL 4442734, at *9-10.

[25]    D.I. 1 ¶¶ 124-25.  See also Springel v. Prosser, Bankr. No.
2006-30009, 2017 WL 721991 (D.V.I. Feb. 23, 2017) (affirming five
orders relating to the wine litigation).

and other un-named co-conspirators.[26]   The Defendants filed
motions to dismiss, which the District Court granted based on the
Barton doctrine.[27]   The District Court concluded "that all
Defendants were acting in their professional roles as agents of
the Trustee when the events underlying Plaintiffs' claims took
place."[28]   The District Court allowed the Plaintiffs to file an
amended complaint, which the Plaintiffs did on March 24, 2017.[29]
On June 21, 2021, the District Court dismissed the Amended
Complaint, concluding that "as with Plaintiffs' original
Complaint, the Amended Complaint fails to allege facts sufficient

---

[26]    Case No. 2013-0080, D.I. 1.

[27]    Benta v. Christie's, Inc., No. CV 2013-0080, 2017 WL
1345218, at *12 (D.V.I. Mar. 17, 2017).   The Barton doctrine
establishes that parties must obtain permission from the
Bankruptcy Court if they wish to bring suit against a receiver or
trustee in another forum for acts taken in his official capacity.
In re DGI Servs., LLC, 2017 LEXIS 1789, at *7 (Bankr. D.N.J. June
26, 2017) (citing Barton v. Barbour, 104 U.S. 126, 127 (1881)
(holding that before a lawsuit can be brought against a court-
appointed receiver, "leave of the court by which [the receiver]
was appointed must be obtained.")).   The Barton doctrine also
applies to claims against bankruptcy trustees and their agents.
See In re VistaCare Group, LLC, 678 F.3d 218, 224 (3d Cir. 2012);
Lawrence v. Goldberg, 573 F.3d 1265, 1269 (11th Cir. 2009).
Courts dismiss suits brought in violation of the Barton doctrine
for lack of subject matter jurisdiction.   VistaCare, 678 F.3d at
225 (holding that failure to obtain permission from the
appointing court means that "no other court would have
jurisdiction to hear the suit.").

[28]    Benta v. Christie's, 2017 WL 1345218, at *10.

[29]    Id. at *12.   Case No. 2013-0080, D.I. 56.   The Amended
Complaint added two new defendants to the case, Fox Rothschild
LLP and the Chapter 7 Trustee.   Id.

to fall within the ultra vires exception to the <u>Barton</u>

doctrine."[30]

On July 20, 2021, the Plaintiffs filed the instant Complaint

in the Bankruptcy Court, which according to the Complaint

"essentially mirrors the complaint recently dismissed in the

District Court."[31]  On November 2, 2021, the Defendants filed the

Motion to Dismiss.[32]  On February 17, 2022, the Plaintiffs filed

a response.[33]  The Defendants filed a reply on April 18, 2022.[34]

The Motion to Dismiss is now ripe for decision.


II.   <u>JURISDICTION</u>

This is a core proceeding.[35]  Venue is proper.[36]  The

Complaint filed by the Plaintiffs states that the Court has

---

[30]   Case No. 2013-0080, D.I. 84, at 18.

[31]   Adv. D.I. 1, at 3.

[32]   Adv. D.I. 23.

[33]   Adv. D.I. 35.

[34]   Adv. D.I. 37.

[35]   28 U.S.C. §§ 157(b)(1) ("[b]ankruptcy judges may hear and
determine all cases under title 11 and all core proceedings
arising under title 11, or arising in a case under title 11,
referred under subsection (a) of this section, and may enter
appropriate orders and judgments, subject to review under section
158 of this title.").

[36]   <u>Id.</u> at § 1409.

8

jurisdiction.[37]  After the Defendants filed their Motion to
Dismiss, however, the Plaintiffs contended that this Court does
not have subject matter jurisdiction over the issues raised by
the Complaint or their claims against the Defendants.[38] Although
Courts have held that filing an action in the Bankruptcy Court
and consenting to the Court's jurisdiction constitutes consent to
entry of a final order by the Court,[39] the Court has an
independent obligation to determine it has jurisdiction.[40]

---

[37]    Adv. D.I. 1, at 1-2.

[38]    Adv. D.I. 35, at 6-9.

[39]    See Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665,
685 n.13 (2015) (concluding that a bankruptcy court can enter a
final order, even where it may not have constitutional authority
to do so, if the parties voluntarily and knowingly consent,
whether expressly or impliedly); In re Tribune Media Co., 902
F.3d 384, 395 (3d Cir. 2018) (holding that a litigant may
impliedly consent to the entry of a final order if they appear
before the bankruptcy court "without an objection"); UD
Dissolution Liquidating Trust v. Sphere 3d Corp. (In re UD
Dissolution Corp.), No. 18-00102 (MFW), 2021 WL 1093933, at *1-2
(Bankr. D. Del. Mar. 19, 2021) (holding that the parties had
impliedly consented to entry of a final order by filing multiple
pleadings in the adversary proceeding without raising
jurisdictional objections).

[40]    Chicot Cnty. Drainage Dist. v. Baxter State Bank, 308 U.S.
371, 376-77 (1940) (concluding that a federal court has the
authority to determine whether it has subject matter jurisdiction
over a proceeding).  See also Richardson v. Monaco (In re Summit
Metals, Inc.), 477 B.R. 484, 494 (Bankr. D. Del. 2012) (stating
that "[w]hen the issue of a court's jurisdiction and the merits
of the case are intertwined, a court may determine subject matter
jurisdiction without reaching the merits, so long as the court
demand[s] less in the way of jurisdictional proof than would be
appropriate at a trial stage.") (internal quotation marks
omitted).

In this case, the Complaint raises issues regarding the
administration of property of the estate and asserts claims
against the professionals appointed by the Court to administer
that estate.  The Court has exclusive jurisdiction over property
of the estate[41] and has jurisdiction over the conduct of
professionals that it appointed to administer that property.[42]
Accordingly, the Court concludes that it has subject matter
jurisdiction over this adversary proceeding and that the
Plaintiffs have consented to a final adjudication of their claim

---

[41]   "The district court in which a case under title 11 is
commenced or is pending shall have exclusive jurisdiction - (1)
of all the property, wherever located, of the debtor as of the
commencement of such case, and of property of the estate . . . ."
28 U.S.C. § 1334(e)(1).  See also In re Patriot Nat'l, Inc., 623
B.R. 696, 707 (D. Del. 2020) (holding that the bankruptcy court
has exclusive jurisdiction "over matters related to the
determination of property of the Debtors' estates."); Schroeder
v. New Century Holdings, Inc. (In re New Century Holdings, Inc.),
387 B.R. 95, 105 (Bankr. D. Del. 2008) (holding that determining
what is estate property and what is available to distribute to
creditors of that estate is exactly the type of proceeding over
which the bankruptcy court has exclusive jurisdiction) (citing
Koken v. Reliance Grp. Holdings, Inc. (In re Reliance Grp.
Holdings, Inc.), 273 B.R. 374, 394-95 (Bankr. E.D. Pa. 2002)).

[42]   See Baker v. Simpson, 613 F.3d 346, 351-52 (2d Cir. 2010)
(holding that the bankruptcy court has jurisdiction over a
malpractice suit against court-approved professionals as it
"arose" in the bankruptcy and would not exist but for the
bankruptcy and stating that "[t]he adjudication of Baker's
malpractice and other claims was an 'essential part of
administering the estate' and therefore implicated the bankruptcy
court's 'core jurisdiction.'"); In re Seven Fields Dev. Corp.,
505 F.3d 237, 258-63 (3d Cir. 2007) (holding that the bankruptcy
court has core jurisdiction over the appellants' claims of
negligence by court-approved professionals which arose during the
bankruptcy and implicated the bankruptcy process).

by this Court as a result of filing their Complaint in this Court.[43]

III. <u>DISCUSSION</u>

    A.   <u>Standard of Review</u>

The Motion to Dismiss is brought under Rules 8(a), 9(b), and 12(b)(6).[44]  Rule 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[45]  When a plaintiff asserts civil RICO claims, he must plead with the increased specificity required under Rule 9(b).[46]  Under that Rule, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[47]  The purpose of Rule 9(b) is to

---

[43]   See <u>Wellness</u>, 575 U.S. at 685 n.13; <u>Tribune Media</u>, 902 F.3d at 395; <u>Patriot Nat'l</u>, 623 B.R. at 707.

[44]   The Federal Rules of Civil Procedure applicable to this adversary proceeding are incorporated in the Federal Rules of Bankruptcy Procedure.  <u>See</u> Fed. R. Bankr. P. 7008, 7009, 7012(b). Therefore, citations herein are to the Federal Rules of Civil Procedure.

[45]   Fed. R. Civ. P. 8(a).

[46]   See <u>Ambrosia Coal & Constr. Co. v. Pages Morales</u>, 482 F.3d 1309, 1316-17 (11th Cir. 2007).  Particularly, when the plaintiff asserts a violation of the mail and wire fraud statutes as a predicate offense for an alleged RICO violation, the "complaint must comply with Rule 9(b)."  <u>Kenney v. Am. Bd. of Internal Medicine</u>, 847 F. App'x 137, 146 (3d Cir. 2021).

[47]   Fed. R. Civ. P. 9(b).

"allow defendants to identify their alleged role and acts in the fraud to appropriately respond to the complaint."[48]

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."[49]  When a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[50]  To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."[51]  Two "working principles" underlie this pleading standard:

> First, the tenet that a court must accept a complaint's
> allegations as true is inapplicable to threadbare
> recitals of a cause of action's elements, supported by
> mere conclusory statements.  Second, determining
> whether a complaint states a plausible claim is context

---

[48]  <u>Allstate Ins. Co. v. Halima</u>, No. 06-CV-1316 DLI/SMG, 2009 WL 750199, at *5 (E.D.N.Y. Mar. 19, 2009).  <u>See also</u> <u>Ross v. Bolton</u>, 904 F.2d 819, 823 (2d Cir. 1990) (stating that the primary purpose of Rule 9(b) "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based.").

[49]  Fed. R. Civ. P. 12(b)(6).

[50]  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

[51]  <u>Id.</u> at 570.

specific, requiring the reviewing court to draw on its experience and common sense.[52]

Under this standard, a complaint must nudge claims "across the line from conceivable to plausible."[53] The court must draw all reasonable inferences in favor of the plaintiff,[54] and the movant "bears the burden to show that the plaintiff's claims are not plausible."[55]

In weighing a motion to dismiss, the Third Circuit instructs courts to follow a three-part analysis. "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"[56] Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pleaded facts as true and disregarding any legal conclusions.[57] Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the

---

[52]   Iqbal, 556 U.S. at 663-64 (citation omitted).

[53]   Twombly, 550 U.S. at 570.

[54]   See, e.g., Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018).

[55]   UMB Bank, N.A. v. Sun Capital Partners V, LP (In re LSC Wind Down, LLC), 610 B.R. 779, 783 (Bankr. D. Del. 2020).

[56]   Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675).

[57]   Santiago, 629 F.3d at 130. See also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 679).

plaintiff has a plausible claim for relief.[58]  After conducting
this analysis, the court may conclude that a claim has facial
plausibility when the pleaded factual content allows the court to
draw the reasonable inference that the defendant is liable for
the alleged misconduct.[59]

    B.   <u>Arguments Regarding Dismissal</u>

The Complaint alleges a wide-ranging conspiracy that
includes allegations against the Defendants, as well as people
and companies that are not parties to the suit.[60]  The Complaint
asserts the following claims against the Defendants: Count 1
alleges that the Defendants, individually and collectively, have
committed and continue to commit numerous racketeering acts under
the RICO statute; Count 2 alleges that the Defendants have
conspired and acted with a common purpose under the RICO statute
to accomplish the Shoys Wines Fraud and the Rogue VIPD
Investigation; Count 3 alleges that the Defendants, individually
and collectively, have committed and continue to commit unlawful
acts which are defined as criminal activity within the meaning of
CICO with respect to the Shoys Wines Fraud and the Rogue VIPD

---

[58]   <u>Santiago</u>, 629 F.3d at 130.

[59]   <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

[60]   Adv. D.I. 1, at 3-7.  The Complaint contains an overview of
a myriad of alleged racketeering enterprises, which the
Plaintiffs contend caused the bankruptcy of Jeffrey Prosser and
his companies.  <u>Id.</u>

Investigation; Count 4 alleges that the Defendants have conspired
and acted with a common purpose under CICO to accomplish the
Shoys Wines Fraud and the Rogue VIPD Investigation; Count 5
alleges that the Defendants jointly and/or individually and/or in
conspiracy with others, have intentionally deprived Benta of his
constitutional rights to free association and public speech and
violated his Constitutional and civil rights;[61] and Count 6
alleges that the Defendants undertook conduct with the purpose of
deterring Benta through intimidation, from testifying freely as a
witness in an ongoing court proceeding on behalf of the
Prossers.[62]

The Defendants contend that the Complaint should be
dismissed on multiple grounds.

    1.   <u>Immunity</u>

       a.   <u>Defendants' Arguments</u>

The Defendants argue that they (as a bankruptcy trustee and
his retained professionals) are entitled to quasi-judicial
immunity from personal liability for acts taken within their
authority as court officers and to absolute immunity for actions
taken pursuant to specific Court Orders.[63]   The Defendants assert

---

[61]   <u>See</u> 42 U.S.C. § 1983.

[62]   <u>See</u> 42 U.S.C. § 1985.

[63]   <u>In re J & S Props., LLC</u>, 545 B.R. 91, 94 (Bankr. W.D. Pa.
2015).

that throughout the bankruptcy proceeding, they acted within
their scope of authority or pursuant to specific Bankruptcy Court
Orders.[64]  In fact, they note that it was such a conclusion that
caused the District Court to dismiss the complaint and amended
complaint filed by the Plaintiffs in that Court (which were
premised on the same allegations as the instant Complaint).[65]
Consequently, the Defendants assert that they have judicial
immunity from the claims of the Plaintiffs and that the Court
should dismiss the Complaint with prejudice.

### b.    Plaintiffs' Arguments

The Plaintiffs do not directly respond to the Defendants'
argument of absolute immunity.  Instead, the Plaintiffs contend
that the Barton doctrine prevented the District Court from ruling
on the substance of their complaint, as the District Court
concluded that the Barton doctrine left it without subject matter
jurisdiction.  The Plaintiffs further argue that this Court also
lacks subject matter jurisdiction to decide the merits of their
claims because the bankruptcy case converted to a chapter 7 no-

---

[64]    For example, the Defendants contend that many of their
actions of which the Plaintiffs complain were taken pursuant to
the February 9, 2011, Turnover Order.

[65]    Springel v. Prosser, 2017 WL 721991, at *10.  Adv. D.I. 1,
at 3 ("This Complaint essentially mirrors the Complaint recently
dismissed in the District Court adjusted for events occurring
after the amended complaint was filed.").

16

asset case subsequent to the 2010 sale of the ICC business.[66]
Because there is no possibility of a distribution to unsecured
creditors, they contend that the merits of their federal and
state claims are irrelevant to the administration of the case and
an adjudication of them by this Court would be a clear abuse of
discretion.[67]  The Plaintiffs assert that they only filed this
suit to obtain the Court's permission to pursue their claims in
another forum.

c.  Court's Conclusions

The Court rejects the Plaintiffs' contentions.  The case
cited by the Plaintiffs for the proposition that the Court has no
jurisdiction over their claims because this is a no-asset case is
distinguishable.  The Eltech Court dismissed a turnover complaint
filed by a creditor against the debtor because the debtor held no
property owned by the creditor.[68]  That case did not involve
claims against estate professionals for actions taken by them
pursuant to their authority or specific court orders.[69]

---

[66]    Adv. D.I. 35, at 6-9.

[67]    In re Eltech, Inc., 313 B.R. 659, 664-65 (Bankr. W.D. Pa.
2004) (dismissing an adversary proceeding after conversion to
chapter 7 because, even if successful, there would be no
distribution to creditors).

[68]    Id. at 666-67.

[69]    Id. at 663-65.

17

Furthermore, the Complaint the Plaintiffs filed in this Court does <u>not</u> seek permission to pursue their claims in another court. In fact, the Complaint only seeks affirmative relief from this Court against the Defendants for their alleged violations of RICO, CICO, and other statutes.

Even if the Complaint sought permission to file suit in another jurisdiction, however, it would not deprive this Court of jurisdiction to adjudicate the merits of the claims the Plaintiffs press against the Defendants. In fact, most courts conclude that allegations of misconduct asserted against a trustee or other estate professional involved in a bankruptcy case are core matters and that, consequently, the proper court to adjudicate those claims is the court which appointed those professionals.[70] The Court has found no cases holding that the Court lacks jurisdiction over such claims if the estate has no assets. Nor does the Court find any basis for such a holding.

---

[70]   See <u>Harris v. Wittman (In re Harris)</u>, 590 F.3d 730, 736-42 (9th Cir. 2009) (holding that matters concerning the administration of the estate by court-appointed professionals are core proceedings and those professionals receive the benefits of quasi-judicial immunity); <u>In re Harris Pine Mills</u>, 44 F.3d 1431, 1435-38 (9th Cir. 1995) (holding that plaintiffs' post-petition state law claims asserted against the bankruptcy trustee for conduct intertwined with the trustee's sale of estate property involved a core proceeding); <u>Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.</u>, 973 F.2d 474, 483 n.4 (6th Cir. 1992) (holding that "[a]ll claims against [the trustee] related to his conduct during the . . . bankruptcy [case], and should be considered core proceedings.").

Further, the Court concludes that judicial immunity bars the claims asserted by the Plaintiffs in their Compliant.  Judicial immunity is a defense available to bankruptcy trustees and professionals when they act within the scope of their authority and pursuant to court order.[71]  For such immunity to apply, the defendants must establish four elements: "(1) their acts were within the scope of their authority; (2) the debtor had notice of their proposed acts; (3) they candidly disclosed their proposed acts to the bankruptcy court; and (4) the bankruptcy court approved their acts."[72]

In this case, based on the allegations in the Complaint itself, the Court concludes that the Defendants are entitled to immunity from the claims asserted.  Many of the allegations relate to actions taken by the Plaintiffs pursuant to specific Court orders.  Even in the absence of specific Court orders, the Court concludes that all the allegations in the Complaint involve actions taken by the Defendants consistent with the Trustee's statutory duties and their authority as retained professionals

---

[71]   See J & S Props., 545 B.R. at 94. See also Harris, 590 F.3d at 742; In re Crown Vantage, Inc., 421 F.3d 963, 973 (9th Cir. 2005).

[72]   Summit, 477 B.R. at 501 (citing Harris, 590 F.3d at 742).

for the estate.[73]   Therefore, the Court concludes that all the

acts of the Defendants, which form the basis of the allegations

against them in the Complaint, are entitled to judicial immunity.

Consequently, the Court concludes that the Complaint fails to

state a claim for relief and must be dismissed with prejudice.

    2.   Collateral Estoppel

        a.   Defendants' Argument

    The Defendants also argue that the Bankruptcy Court and

District Court have already ruled on the issues raised by the

Plaintiffs and that they are barred from asserting them again by

the doctrine of collateral estoppel.

    For example, the Defendants cite the Wine Sanctions Opinion,

where the Bankruptcy Court made several findings of fact that

conclusively established that it was the Plaintiffs (not the

Defendants) who were responsible for the spoilage of the Shoys

Wines and that Christie's had the right to inspect and reject the

wines if they were not marketable.[74]   The Defendants argue that

---

[73]   For example, the Bankruptcy Court had authorized the Chapter
7 Trustee to employ Christie's to package and move the Shoys Wine
in preparation for sale.  Adv. D.I. 1 ¶¶ 36-49.  The Court
authorized the Defendants to sell one of the estate's paintings.
Id. ¶¶ 136-37.  The Defendants' other actions were taken to
benefit the bankruptcy estate, especially after the Sanctions
Order was entered for the Plaintiffs' violation of court orders
and civil contempt of court.  Adv. D.I. 1 ¶¶ 64, 70, 81, 110,
120, 125.

[74]   Wine Sanctions Opinion, at 17-19, 19 n.24, 24-25.

the Plaintiffs improperly seek to change that result by alleging a wide-ranging conspiracy and rebranding their claims as fraud.

b. <u>Plaintiffs' Arguments</u>

In their response, the Plaintiffs again focus on the Court's purported lack of jurisdiction.  While the Plaintiffs cite law on collateral estoppel, they provide no analysis of why it does not apply to the current case.  The Plaintiffs' sole argument against the applicability of collateral estoppel is that Benta was not a party to the Wine Sanctions Motion but was, at best, a witness at the Contempt Hearing.  Consequently, the Plaintiffs state that Benta did not lose in a prior proceeding and collateral estoppel should not apply to him.

c. <u>Court's Conclusions</u>

The Third Circuit has identified four standard requirements in applying collateral estoppel — or issue preclusion — to a current case: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."[75]  The courts will consider whether the precluded party "had a full and fair opportunity to

---

[75]   <u>Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.</u>, 458 F.3d 244, 249 (3d Cir. 2006) (internal quotations omitted).

litigate the issue in question in the prior action,"[76] and

whether the court determined the issue with a final and valid

judgment.[77]  The Third Circuit states that collateral estoppel

requires "mutuality" where parties on both sides of the current

proceeding are bound by the judgment in the prior proceeding.[78]

However, under the doctrine of non-mutual collateral estoppel, "a

litigant may also be estopped from advancing a position that he

or she has presented and lost in a prior proceeding against a

different adversary."[79]  Applying defensive collateral estoppel

means "the party to be precluded must have had a 'full and fair'

opportunity to litigate the issue in the first action."[80]

In the instant Complaint, the Prossers bring claims based on

issues that they have litigated (and lost).  In the Wine

Sanctions litigation, the Prossers articulated the same

allegations of misconduct by the Trustees and their

professionals, and the Bankruptcy Court soundly rejected them in

---

[76]   Id.

[77]   Id.

[78]   Peloro v. U.S., 488 F.3d 163, 175 (3d Cir. 2007).

[79]   Id.

[80]   Id.  See also Parklane Hosiery Co., Inc. v. Shore, 439 U.S.
322, 328 (1979).

the Wine Sanctions Opinion.[81]  Despite the Prossers' appeal of

that decision, the District Court affirmed it on February 23,

2017.[82]

The Prossers, as they could not, do not dispute that the

factual premises underlying the instant Complaint have been

adjudicated in the Wine Sanctions Opinion.  In fact, their

Complaint criticizes the Wine Sanctions Opinion when it alleges

that the same conduct by the Trustees and their professionals

constituted fraud, perjury, racketeering, and unlawful acts in

---

[81]   The Complaint alleges that the Defendants did not reserve
the right to physically inspect the wine.  Adv. D.I. 1 ¶¶ 36, 65.
However, the Wine Sanctions Opinion held to the contrary that
Christie's reserved the right to physically inspect the Shoys
wines prior to taking them for sale.  Wine Sanctions Opinion, at
17.  The Complaint alleges that the Defendants deliberately
rejected the wines, in order to seek sanctions against the
Prossers.  Adv. D.I. 1 ¶¶ 49-54.  The Wine Sanctions Opinion
held, instead, that Christie's did not take the wines because
their condition had deteriorated.  Wine Sanctions Opinion, at 17-
18.  The Complaint alleges that the wine was not spoiled.  Adv.
D.I. 1 ¶¶ 59-64.  However, the Wine Sanctions Opinion held that
the wines were not sufficiently cooled and were stored
improperly.  Wine Sanctions Opinion, at 17-18.  The Complaint
alleges that the Defendants themselves improperly collected,
transported, and tried to destroy the Shoys wine and then lied to
the Court about it.  Adv. D.I. 1 ¶¶ 65-66, 70-82.  The Wine
Sanctions Opinion, however, found that even if the Defendants had
unplugged the air conditioner it did not cause any additional
damage to the wines, as the wines had suffered bad storage for
years.  The Court concluded that it was the Prossers, not the
Trustees or their agents, who had ruined the Shoys wine.  Wine
Sanctions Opinion, at 17-18, 18 n.23, 19, 19 n.24, 22 n.30, 23-
26.

[82]   _Springel v. Prosser_, 2017 WL 721991 at *2.

violation of RICO and CICO.[83]  However, collateral estoppel
precludes a party from relitigating an issue "actually decided in
a prior action and necessary to the judgment."[84]

All the requirements for the application of collateral
estoppel against the Prossers are present in this case.  It is
undisputed that the Complaint's allegations were previously
asserted, were actually litigated (with expert testimony, as
well), were necessary to the Court's decision to sanction the
Prossers and were rendered in a proceeding in which the Prossers
were fully represented.[85]  Therefore, the Court concludes that
collateral estoppel mandates that the Complaint brought by the
Prossers must be dismissed with prejudice.[86]

---

[83]    Adv. D.I. 1 ¶¶ 66-82, 101-24.

[84]    Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.,
140 S. Ct. 1589, 1594 (2020).

[85]    See Peloro, 488 F.3d at 175 (concluding that the normal
rules of collateral estoppel apply to decisions of bankruptcy
courts and dismissing the claim on that basis).

[86]    The Prossers are also barred from bringing their Complaint
by the doctrine of res judicata.  Res judicata applies when there
is "(1) a final judgment on the merits in a prior suit involving
(2) the same parties or their privies and (3) a subsequent suit
based on the same cause of action."  Wallace v. United Parcel
Serv., 387 F. App'x 127, 129 (3d Cir. 2010) (quoting In re
Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008)).  Res judicata
prevents parties from bringing the same claims or claims that
could have been brought in a previous action again.  Wallace, 387
F. App'x at 129.  Because all the factual allegations in the
Complaint were the subject of the Bankruptcy Court's prior
decisions, the Court concludes that the claims asserted in the
Complaint could have been brought at that time and are barred.

24

While collateral estoppel is not applicable to Benta, who was not a party to the Wines Sanctions litigation and therefore is not bound by the Wine Sanctions Opinion, the claims asserted by him must nonetheless be dismissed for the other reasons articulated herein.[87]

### 3.    Statutes of Limitations

#### a.    Defendants' Argument

The Defendants also argue that each of the Plaintiffs' causes of action are barred by the applicable statutes of limitations.  The Defendants argue that the Plaintiffs' claims are based on acts which allegedly occurred no later than 2011.[88]

The Defendants state that the civil RICO causes of action are subject to a four-year statute of limitations, which begins to accrue from the time the plaintiff knew or should have known of their injury.[89]  In the Complaint, the Plaintiffs allege that the RICO violation is based on the Shoys Wine Fraud and Rogue VIPD Investigation.  The Defendants state that these actions all took place in 2011 and that the Plaintiffs knew or should have known of their alleged injuries by the end of 2011.[90]

---

[87]    See Part B.1.c. supra and Part B.3.d. infra.

[88]    See Adv. D.I. 1 ¶¶ 36-116.

[89]    Prudential Ins. Co. of Am. v. U.S. Gypsum Co., 359 F.3d 226, 232-33 (3d Cir. 2004).

[90]    Adv. D.I. 1 ¶¶ 36-118, 148-50, 154-57.

Accordingly, they contend that the RICO claims had to be asserted by the end of 2015.

Similarly, the Defendants contend that the CICO claims are subject to a five-year statute of limitations.[91]  The CICO causes of actions also relate to the same conduct in the year 2011;[92] therefore, the Defendants contend that the Plaintiffs had to assert the CICO claims by the end of 2016.

Lastly, the Defendants argue that the remaining claims are subject to a two-year statute of limitations.[93]  The Defendants argue that the Plaintiffs' allegations supporting those claims occurred in 2011.[94]  Therefore, the Defendants contend that those

---

[91]   See 14 V.I.C. § 607(h) (stating "a civil proceeding or action under this section may be commenced within five years after the conduct made unlawful under section 605 [Violations]").  See also Bluebeard's Castle Hilltop Villa Condominium Ass'n v. Cavanaugh (In re Equivest St. Thomas, Inc.), Adv. No. 07-3004, 2010 WL 4343616, at *5 (Bankr. D.V.I. Nov. 1, 2010).

[92]   Adv. D.I. 1 ¶¶ 36-118, 160-65, 168-74.

[93]   The Defendants contend that the claims brought pursuant to section 1983 and section 1985 are subject to the statute of limitations for personal injury actions, which in the Virgin Islands is two years.  The limitations period accrues when the plaintiff knows or should have known of the injury that is the basis of the claim.  Ormsby v. Luzerne Cty. Dep't of Pub. Welfare Off. of Hum. Servs., 149 F. App'x 60, 62 (3d Cir. 2005).

[94]   The fifth cause of action relates to conduct regarding Benta's termination that occurred in 2011.  The sixth cause of action is based on alleged witness intimidation that occurred in 2011 as well.  Adv. D.I. 1 ¶¶ 36-118, 179.

claims must have been asserted by the end of 2013.

>   b.   Plaintiffs' Argument

The Plaintiffs do not directly respond to the Defendants' arguments for each of the causes of action.  Instead, the Plaintiffs argue generally that the statute of limitations was tolled.[95]  The Plaintiffs assert that claims are tolled while a case involving state claims is under consideration by a federal court.[96]  Thus, the Plaintiffs argue that the statute of limitations was tolled because they had timely asserted those claims in the wrong forum.  In addition, they contend that they were prevented from asserting their claims based on the Defendants' actions, which is another basis to toll the statute of limitations.  The Plaintiffs argue that for all these reasons their claims are not barred by the statutes of limitations.

>   c.   Defendants' Reply

The Defendants respond that the Plaintiffs' arguments have no basis in law and that they are seeking an unprecedented application of equitable tolling and section 1367(d).  First, the Defendants argue that section 1367(d) only operates to toll state law claims' statute of limitations where a plaintiff asserts a state law claim in federal court under the federal court's

---

[95]   Artis v. District of Columbia, 138 S. Ct. 594 (2018).

[96]   28 U.S.C. § 1367(d).

supplemental jurisdiction, which the federal court later declines
to exercise.  The Defendants assert that this tolling allows a
plaintiff to pursue the state law claim once again in state court
after dismissal by the federal court.  The Defendants contend
that the Plaintiffs are improperly seeking to expand that
doctrine to apply to federal claims that are time-barred.

Second, the Defendants assert that the Plaintiffs did not
timely assert their claims in the wrong forum.  Instead, the
Defendants state that the Plaintiffs chose to pursue claims in
the District Court improperly without seeking this Court's
permission in violation of the Barton doctrine.  The Defendants
contend that the Plaintiffs failed to exercise the necessary due
diligence in preserving their claims to benefit from equitable
tolling, ignoring opportunities to preserve their claims in this
Court.

Lastly, the Defendants state that the Plaintiffs have
provided no support for their contention that the Defendants'
conduct prevented them from pursuing their claims and warrants
tolling the statute of limitations.  Rather, the Defendants
contend that the conduct alleged in the Complaint is irrefutably
confined to the year 2011 and could not have prevented the
Plaintiffs from filing suit before the various statutes of
limitations expired.

d.  <u>Court's Conclusions</u>

Though the RICO statute does not expressly provide a statute of limitations, the Supreme Court has held that civil RICO claims are subject to a four-year statute of limitations.[97]  The statute of limitations begins to run when the "plaintiffs knew or should have known of their injury" and "[knew] or should have known of the source of their injury."[98]  CICO claims are subject to a five-year statute of limitations.[99]  The Third Circuit has held that section 1983 and section 1985 claims are subject to the statute of limitations for personal injury actions,[100] which under Virgin Islands law is two years.[101]  The limitations period does not begin to run until the plaintiff has discovered its claim, or "by exercising reasonable diligence, should have discovered (1)

---

[97]  <u>Prudential</u>, 359 F.3d at 232-33 (citing <u>Agency Holding Corp. v. Malley-Duff & Assoc. Inc.</u>, 483 U.S. 143, 156 (1987)).

[98]  <u>Prudential</u>, 359 F.3d at 233 (quoting <u>Forbes v. Eagleson</u>, 228 F.3d 471, 484-85 (3d Cir. 2000)).

[99]  14 V.I.C. § 607(h).  <u>See also</u> <u>Equivest</u>, 2010 WL 4343616, at *5.

[100]  <u>Ormsby</u>, 149 F. App'x at 62.  <u>See also</u> <u>Lake v. Arnold</u>, 232 F.3d 360, 368 (3d Cir. 2000).

[101]  5 V.I.C. § 31(5)(A).  <u>See also</u> <u>Helman v. Marriott Int'l, Inc.</u>, No. CV 2019-36, 2020 WL 4506199, at *12 (D.V.I. Aug. 5, 2020); <u>Charleswell v. Chase Manhattan Bank, N.A.</u>, No. Civ. A. 01-119, 2009 WL 1850650, at *7 (D.V.I. June 24, 2009); <u>Pemberton Sales & Serv., Inc. v. Banco Popular de Puerto Rico</u>, 877 F. Supp. 961, 968 n.18 (D.V.I. 1994).

29

that she has been injured, and (2) that this injury has been
caused by another party's conduct."[102]

In this case, there is no dispute that the Plaintiffs failed
to file their Complaint timely.  Based on the allegations in the
Complaint itself, the acts on which the claims are based occurred
in 2011.  Thus, the Plaintiffs had to bring their claims between
2013 and 2016.

i.  Section 1367(d)

Section 1367(d) tolls the statute of limitations until 30
days after a state-law claim is dismissed by a federal court
exercising supplemental jurisdiction.[103]  The purpose of that
statute is to pause the statute of limitations to allow a
plaintiff asserting a state-law claim under a federal court's
supplemental jurisdiction to pursue its claim in state court if
the federal court later declines jurisdiction.[104]

The Court concludes that section 1367(d) is not applicable
in this case.  The District Court did not decline to exercise
supplemental jurisdiction over state law claims asserted in the

---

[102]  Equivest, 2010 WL 4343616, at *5 (quoting Boehm v. Chase
Manhattan Bank, No. CIV. 1999/0209, 2002 WL 31986128, at *3
(D.V.I. Dec. 30, 2002)).

[103]  See Artis, 138 S. Ct. at 598.

[104]  Id.

30

Complaint.[105]   Instead, the District Court dismissed all the
claims in the Complaint and Amended Complaint under the Barton
doctrine because the Plaintiffs had not obtained authority to sue
the Defendants from the Bankruptcy Court which had appointed
them.

### ii.  Equitable Tolling

Equitable tolling applies when a plaintiff has "been
prevented from filing in a timely manner due to sufficiently
inequitable circumstances."[106]  Equitable tolling occurs "(1)
where the defendant has actively misled the plaintiff respecting
the plaintiff's cause of action; (2) where the plaintiff in some
extraordinary way has been prevented from asserting his or her
rights; or (3) where the plaintiff has timely asserted his or her
rights mistakenly in the wrong forum."[107]  However, a plaintiff
will not receive the benefit of equitable tolling unless he or
she has "exercised due diligence in pursuing and preserving her
claim."[108]  The principles of equitable tolling do not extend to

---

[105]   The only claims in the Complaint arising under the
territorial laws of the Virgin Islands are the CICO claims.

[106]   Santos ex rel. Beato v. U.S., 559 F.3d 189, 197 (3d Cir.
2009) (quoting Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d
236, 240 (3d Cir. 1999)).

[107]   Santos, 559 F.3d at 197 (quoting Hedges v. U.S., 404 F.3d
744, 751 (3d Cir. 2005)).

[108]   Santos, 559 F.3d at 197.

excusable neglect, and the courts apply it sparingly.[109]

The Court concludes that equitable tolling is not appropriate in this case.  The Plaintiffs chose to pursue their claims in the District Court without seeking the Bankruptcy Court's permission, thereby violating the Barton doctrine.  The Defendants did not prevent the Plaintiffs from timely filing their action in the proper forum.  In fact, the Defendants filed a memorandum of law in the District Court on August 26, 2013,[110] which raised the Barton doctrine, thereby alerting the Plaintiffs to this defect in plenty of time to seek permission of the Bankruptcy Court and file their action timely.  Nonetheless, the Plaintiffs did not rectify this defect or file the instant Complaint until July 20, 2021, long after the statutes of limitations had expired.  Thus, the Court concludes that the Plaintiffs failed to exercise the necessary due diligence to assert their claims and, accordingly, they are not entitled to equitable tolling.[111]  Consequently, the Court concludes that the Complaint should also be dismissed as time-barred.

---

[109]  Id. (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

[110]  Case No. 2013-0080, D.I. 10, at 5-6.

[111]  Santos, 559 F.3d at 197.

IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Motion to Dismiss will be granted.

An appropriate Order is attached.


Dated: August 26, 2022        BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge